858 P.2d 750

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Lorin TROY, Defendant–Appellant.**

**No. 19465.**

Supreme Court of Idaho,
Coeur D'Alene, May 1993 Term.

Aug. 27, 1993.

Gregory A. Jones, Kootenai County Public Defender, and Jonathan B. Hull, Deputy Public Defender, Coeur d'Alene, for appellant. Jonathan B. Hull, argued.

Larry EchoHawk, Atty. Gen. and Michael A. Henderson, Deputy Atty. Gen., Boise, for respondent. Michael A. Henderson, argued.

McDEVITT, Chief Justice.

## BACKGROUND

On December 15, 1990, appellant, Lorin Troy ("Troy"), was at his home with a fifteen-month-old minor child ("S.S.A."). During that evening, S.S.A. sustained head injuries. The paramedics arrived at the house, after Troy had a friend call "911," and found S.S.A. on the floor and unconscious. Troy told the paramedics three different versions of how S.S.A. was injured: (1) when lifting him out of his playpen, his legs caught on the railing and Troy dropped him; (2) when Troy tripped over a dog and fell with S.S.A. in his arms; and (3) when S.S.A. began to wiggle and move in his arms, he fell and S.S.A.'s head hit against the coffee table.

On December 20, 1990, Detective James Greensides ("Greensides") of the Coeur d'Alene, Idaho Police Department asked Troy to come to the police station for an interview. Troy was not placed under arrest and he drove himself to the police station. At the beginning of the approximately three hour interview, Greensides read Troy his *Miranda* rights, and Troy signed a *Miranda* waiver form. During the interview, Troy maintained his earlier accounts of what happened to S.S.A. However, late in the interview, Troy admitted that he had picked up and shaken the crying S.S.A.:

> Well after Roseann left I was just really, ah, I felt down all week because I turned down a job and that means no extra money. I've been stressed out for months on, ah, I was behind my drum set, tunin' my drums, and [S.S.A.] was in his playpen, and he started to whimper a little bit and cry. And so at first I just ignored him, then when he started to scream, it's just, it's like it goes through one [ ]ear and out the other, and just everything in your body explodes. So I went over and picked him up and I shook him, not no intention to hurt him at all, just kinda get him to quiet down so he'd either go to sleep or ah, I was ah....

## PRIOR PROCEEDINGS

On January 8, 1991, Sergeant Ron Clark ("Clark") of the Coeur d'Alene Police Department appeared in court for a probable cause hearing. The minutes of the hearing reflect that Clark said that Troy was watching a juvenile child, the child started crying, Troy grabbed and shook the child until the child passed out, and the child was taken to the Kootenai Medical Center for treatment of head injuries. Furthermore, the minutes contained the following language:

> [Troy] was called to station for interview. [Troy] admitted shaking child into unconsciousness. Didn't intend to hurt child—trying to stop crying—[Troy] under stress.

The presiding judge found probable cause existed for the issuance of a criminal complaint and summons, which he issued on the same day.

On January 24, 1991, Troy appeared in court, was informed of the charge against him, violation of I.C. § 18–1501(1), injury to children.[1] Troy was also informed of his rights and requested appointment of counsel. On February 13, 1991, Troy waived his preliminary hearing "due to plea negotiations."

On February 13, 1991, a criminal information was filed against Troy. Troy was charged with violating I.C. § 18–1501(1) under the following circumstances:

> [O]n or about the 15th day of December, 1990, in the County of Kootenai, State of Idaho, did under circumstances likely to produce great bodily harm or death, commit an injury upon a child under eighteen years of age, to-wit: S.S.A., of the age of 15 months, by unlawfully and wilfully causing or permitting said child to suffer by shaking S.S.A. causing intercranial and retina hemorrhage....

Troy was arraigned on February 12, 1991, and the court accepted his "not guilty" plea on February 18, 1991.

On April 4, 1991, Troy filed a motion to suppress "all statements made by [him] to [a] police officer on or about December 20, 1990." His motion was based upon the Fifth Amendment to the Constitution of the United States, and he requested a hearing on the matter. On April 12, 1991, Troy filed a motion to continue the motion to suppress, which was granted by order on the same day.

A hearing was held on the motion to suppress on April 19, 1991, and the court issued its memorandum opinion and order denying the motion on April 26, 1991. The court concluded:

> The interview was a noncustodial interview.... [T]he statements made by

Troy were his free and voluntary act.... [T]he statements made by Troy were not extracted by any sort of threats, violence, or promises, express or implied.

A jury trial was held from April 29 to May 1, 1991. The jury returned its verdict of "guilty" on May 1, 1991, finding Troy guilty of the crime of injury to a child, and that the offense occurred under circumstances likely to produce great bodily harm or death. Sentencing proceedings were held on July 11, 1991. The court sentenced Troy to three years in prison, with a fixed term of one year and an indeterminate term of two years, with jurisdiction retained. An order to this effect was filed on July 12, 1991, and Troy was released on his own recognizance pending receipt by the Idaho State Board of Corrections.

On July 11, 1991, Troy filed a notice of appeal, appealing from the final judgment and sentence entered on July 11, 1991. Also on July 11, 1991, Troy filed a motion and order for stay of execution, pursuant to I.C.R. 46(b), and based upon his filing of a notice of appeal. The court signed the order on July 31, 1991.

On October 25, 1991, Troy filed a motion for reconsideration of sentence pursuant to I.C.R. 35 and a motion for stay of disposition. Troy's I.C.R. 35 motion was "made as a plea for leniency," and his motion for stay was based on his filing of a notice of appeal.

### ISSUE ON APPEAL

On appeal, Troy raises the following issue:

**WAS THE DISTRICT COURT'S RULING THAT TROY'S STATEMENTS TO DETECTIVE GREENSIDES WERE VOLUNTARILY GIVEN CORRECT?**

### ANALYSIS

 The only issue in this case is whether Troy's *non*-custodial confession was giv-

---

1. 18–1501. Injury to children.—(1) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care and custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding one (1) year, or in the state prison for not less than one (1) year nor more than ten (10) years.

en voluntarily. Troy admits that he was not in custody when he confessed to the crime charged. Furthermore, Troy does not challenge the trial court's denial of his motion to suppress under the Idaho Constitution, but instead, only under the United States Constitution.

The United States Supreme Court has recognized "that non-custodial interrogation might possibly in some situations, by virtue of some special circumstance, ... be characterized as one where" a defendant's confession was not given voluntarily. *Beckwith v. United States*, 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1 (1976). Troy urges this Court to evaluate the voluntariness of his confession pursuant to the standard set forth by the United States Supreme Court in *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897):

> [A] confession, in order to be admissible, must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence....

*Bram,* 168 U.S. at 542–43, 18 S.Ct. at 187, quoting 3 Russ.Crimes (6th Ed.) 478. However, the United States Supreme Court recently rejected "this passage from *Bram,* which under current precedent does not state the standard for determining the voluntariness of a confession...." *Arizona v. Fulminante*, 499 U.S. 279, 284, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302 (1991). Instead, the proper inquiry is to look to the totality of the circumstances and then ask whether the defendant's will was overborne. *Fulminante*, 499 U.S. at 287, 111 S.Ct. at 1252–53.

In determining the voluntariness of a confession, a court must look to the characteristics of the accused and the details of the interrogation, including the following:

1. Whether *Miranda* warnings were given;
2. The youth of the accused;
3. The accused's level of education or low intelligence;
4. The length of the detention;
5. The repeated and prolonged nature of the questioning; and
6. Deprivation of food or sleep.

*Scheckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *see Beckwith*, 425 U.S. at 348, 96 S.Ct. at 1617.

In this case, *Miranda* warnings were given to Troy at the beginning of his interview with Detective Greensides:

*Greensides:* Have you ever had your rights read to you?

*Troy:* Huh?

*Greensides:* Have you ever had your rights read to you?

*Troy:* Well what do you mean, as

*Greensides:* Well I'm going to read you your rights. This doesn't mean that you are under arrest. This means that I want to talk to you. We are in a small room at the police station. OK?

*Troy:* OK.

*Greensides:* You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you're being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one. Do you understand each of those?

*Troy:* Yeah.

*Greensides:* Any questions about any of them?

*Troy:* Uh, the one with the lawyer part. You know I have no money.

*Greensides:* The court will appoint a lawyer for you if you're financially unable to afford one.

*Troy:* OK.

*Greensides:* OK, right now, do you understand each of those?

*Troy:* Yes.

Immediately after this dialogue, Troy signed a written waiver of his *Miranda* rights. Furthermore, the record reveals that Troy was twenty-five years old at the

time of his confession on December 20, 1990. In addition, the presentence investigation report reveals that Troy obtained his General Equivalency Diploma from North Idaho College in 1986. The interview between Troy and Greensides lasted approximately three hours. During the interview, Greensides repeatedly told Troy that he knew Troy was not telling the truth. Troy persisted in his original explanation (that S.S.A. hit his head on the floor and/or coffee table), and slight alterations thereof, then changed the story by saying that he did shake S.S.A. after seeing S.S.A.'s eyes roll back into his head, and finally admitted that he shook S.S.A. after S.S.A. started screaming.

Troy points to statements made to him during the interview concerning (1) that the prosecutor would prosecute Troy with the evidence that was available prior to Troy giving his confession; (2) that Troy's initial account of what happened with S.S.A. was not consistent with the evidence; and (3) that the conduct Troy ultimately confessed to was not a crime:

> *Greensides:* Try to explain this. You go over, you pick the kid up, he's whining, he's crying. Out of frustration, you shake him; not to hurt him, to get him back to sleep.
>
> *Troy:* Not that way at all.
>
> *Greensides:* What happened? Let me explain this another way. Let me give you another option. Let's not beat a dead horse with this other story.
>
> *Troy:* That's okay because—I don't know. Because—
>
> *Greensides:* Let me ask you this: If that happened, if you'd gone over, picked him up and shook him out of frustration, do you think that would be a heinous crime?
>
> *Troy:* I know nothing about the law. I really don't know.
>
> *Greensides:* Well, what's your gut? I mean do you think it's a heinous crime if you went over (inaudible)? You didn't go over to hurt the kid. You went over to just get him to sleep, you know. You're frustrated. You get frustrated with kids. Would that be a heinous crime? Do you think this is a person

that we should put in the penitentiary for life?

> *Troy:* No.
>
> *Greensides:* No?
>
> *Troy:* Not at all.
>
> *Greensides:* How about if a person went over, picked him up and intentionally banged his head on the wall or hurt him? Is that somebody we should put in the penitentiary?
>
> *Troy:* Oh, God. Well, people like that would need help, I would think.
>
> (Inaudible)
>
> *Greensides:* You shouldn't do that to kids?
>
> *Troy:* No.
>
> *Greensides:* Okay. You know, if I was to pick the scenario, you've got a normal guy, a normal person, normal parent that overreacts, that's all they did. They overreacted. Is that a crime? No. I can tell you right now, overreacting is not a crime.
>
> *Troy:* What I'm telling you right now is—
>
> *Greensides:* My concern is that this whole case does not get presented as a crime when in fact it was not a crime. That's what I'm concerned about.
>
> *Troy:* Yeah. But what this is—correct me if I'm wrong, but—so what you just told me, you're trying to get me to say that I went up to the playpen and just shook the hell out of [S.S.A.] when I didn't do that at all?
>
> *Greensides:* That's not what I'm saying.
>
> *Troy:* Well, I'm probably getting confused, and I don't know—

Such a statement by the police officer, regarding the criminal nature of a defendant's conduct, must be placed in context. In *Miller v. Fenton*, 796 F.2d 598 (3d Cir.), *cert. denied*, 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986), an officer told the defendant that the defendant was not a criminal before receiving the defendant's confession. The Third Circuit held that the officer's statement did not make the defendant's confession involuntary, where the defendant had been read his *Miranda*

rights, the officer did not state that anyone else thought the defendant was not a criminal, and the officer did not represent that he had authority to affect the charges brought against the defendant.

In the present case, Troy admits that he was not in custody, that he was read and waived his *Miranda* rights, and that he was told that he was free to leave the interview with Detective Greensides at any time. Greensides merely told him that he did not believe him and that the prosecutor was intending to file charges unless there was some explanation which was consistent with the injuries. Neither of these statements are coercive. Detective Greensides is entitled to express doubt. Further, between the time the "over-reactive" statement was made and the ultimate confession, the defendant suggested he wanted to leave and talk to an attorney, to which Greensides agreed. Thereafter, the defendant chose voluntarily to stay and chose to speak, so this was not the product of any comments about it not being a crime. Also, this was not a promise not to prosecute. Looking to the totality of the circumstances, we hold that Troy's confession was given voluntarily; his will was not overborne by Detective Greensides.

Even after Detective Greensides made the "overreacting" comments quoted above, he again told Troy that the prosecutor would decide whether to charge Troy with a crime. The detective never represented that he had the authority to decide whether or not to file charges, as in *Miller* above. Looking to the totality of the circumstances, we hold that Troy's confession was given voluntarily; his will was not overborne by Detective Greensides.

The judgment of conviction is affirmed.

JOHNSON, TROUT and SILAK, JJ. concur.

BISTLINE, Justice, specially concurring.

I concur in the majority's opinion except for its application of *Miller v. Fenton*, 796 F.2d 598 (3d Cir.1986), and the conclusion that Greensides did not communicate a promise not to prosecute to Troy.

As for *Miller*, the majority provides no reason why this Court should follow an opinion by the Third Circuit. It is generally recognized that decisions handed down by federal circuit Courts of Appeal are not precedent. Further troubling is the majority's failure to distinguish between *Miller* and the instant case. Telling someone he is not a "criminal" arguably expresses the personal opinion of the speaker; telling someone certain conduct is not a crime is a factual representation of the law.

Police officers' misrepresentations of law usually lead to suppression of the challenged confession as involuntary. 1 WAYNE R. LAFAVE and JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 6.2 (1984). Moreover, a statement that certain conduct is not a crime carries with it an implied promise that the defendant will not be prosecuted for revealing that he or she has engaged in such conduct. As the majority acknowledges, "A confession, in order to be admissible, ... must not be extracted by any sort of threats or violence, nor obtained by any direct or *implied promises, however slight....*" *State v. Troy*, 124 Idaho at 214, 858 P.2d at 753 (1993) (quoting *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897)) (emphasis added). Better by far that police officers be cautioned that they do not have license to advise potential defendants as to the law (beyond routine Miranda warnings), much less dispense incorrect advice.

Nonetheless, in light of the rest of the interrogation, particularly Greensides' later disclosures that he had no control over the prosecutor's actions, thereby implying that Troy could still be prosecuted, I concur in the majority view that Troy's confession was given voluntarily.