980 P.2d 581

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Stephen FABENY, Defendant–Appellant.**

No. 24130.

Court of Appeals of Idaho.

June 10, 1999.

Alan E. Trimming, Ada County Public Defender; Steven A. Botimer, Deputy Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

PERRY, Chief Judge.

Steven Fabeny was found guilty by a jury of two counts of attempted first degree murder, I.C. §§ 18–4001, –4002, –4003(a), –306 and 20–509(1); one count of attempted robbery, I.C. §§ 18–6501, –306 and 20–509(1); and one count of grand theft by possession of stolen property, I.C. §§ 18–2403(4) and –2407(1). The jury also found that Fabeny committed these crimes by the use of a deadly weapon during the commission of a crime pursuant to I.C. § 19–2520.[1] Fabeny appeals from his judgments of conviction, asserting that: (1) his admissions to a police officer should have been suppressed because Fabeny did not knowingly and voluntarily waive his Miranda[2] rights; (2) the evidence presented to the jury was insufficient to support the guilty verdicts; and (3) the sentences imposed by the district court are excessive. For the reasons set forth below, we affirm.

I.

**FACTS AND PROCEDURE**

Fabeny, who was seventeen years old at the time of these offenses, and James Bur-night, also seventeen, went to Benny's Pawn Shop in Meridian on October 4, 1996. At approximately 5:20 p.m. the two entered the pawn shop, looked at a stereo, had a brief conversation with the store clerk and left. Fabeny and Burnight waited outside the pawn shop until about 5:50 p.m., just before it closed for the night, and then re-entered.

Inside the pawn shop and working that night were Terry Stewart and Justin Stewart, father and son. Terry owned the pawn shop and had earlier discussed with Fabeny the sale of a stereo. However, Fabeny and Burnight did not re-enter the pawn shop with the intent to negotiate the price of the stereo. Burnight brandished a .38 caliber pistol and fired it toward Terry and Justin five times. Terry was hit in the head and Justin in the stomach. Both nearly died.

Fabeny and Burnight did not take any merchandise from the pawn shop and fled the scene. The two were later found in a recreational vehicle sales lot, hiding in one of the vehicles. They were arrested and taken into custody.

Fabeny and Burnight were handcuffed and placed in separate rooms for questioning at the police station. Fabeny was advised of his Miranda rights orally and also signed a written waiver. He was questioned for approximately five hours, from 7:00 p.m. until 12:00 a.m. Originally, Fabeny denied knowing that Burnight had the gun or that Burnight intended to kill the people inside the pawn shop. However, after confronted with statements allegedly made by Burnight implicating Fabeny as the leader and instigator of the crime, Fabeny admitted that he and Burnight stole the pistol from a friend's house and then planned to enter the pawn shop, kill the people inside and steal merchandise.

Fabeny was charged with two counts of attempted first degree murder, attempted robbery, possession of a firearm during the commission of a crime and grand theft by possession of the stolen .38 caliber pistol. Fabeny moved to suppress the incriminating

---

1. This count was dismissed by order of the district court, upon motion by the state, on June 17, 1997.

2. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

statements he made to the police, but the district court denied the motion.

Fabeny was tried before a jury, which returned guilty verdicts on two counts of attempted first degree murder, one count of attempted robbery and one count of grand theft by possession of stolen property. The district court sentenced Fabeny to fifteen years fixed for one count of attempted first degree murder; consecutive indeterminate terms of fifteen years for the second attempted first degree murder and the attempted robbery; and a concurrent fixed term of fourteen years for the grand theft by possession of stolen property. Aggregated, Fabeny's sentence is a unified term of forty-five years, with fifteen years fixed. Fabeny appealed.

## II.

## DISCUSSION

Fabeny submits three issues for our review. First, he claims that he did not knowingly and voluntarily waive his Miranda rights and, therefore, the incriminating statements he made to the police officer should have been suppressed. Fabeny also claims that the evidence is insufficient to sustain the jury's guilty verdicts. Finally, he claims the district court imposed excessive and unreasonable sentences. We will address each issue in turn.

### A. Motion to Suppress

Fabeny claims that the district court made erroneous factual findings when it determined that Fabeny knowingly and voluntarily waived his Miranda rights prior to giving his confession. Fabeny argues that the state failed to produce evidence showing that he was a person of average intelligence and average maturity. Therefore, according to Fabeny, the district court's finding that Fabeny was a young man of average intelligence and maturity was erroneous. Fabeny also asserts that because he was handcuffed and seventeen years old, the district court erred when it found that he understood the proceedings and was not coerced into making a statement. In addition to his claims that the district court made erroneous factual

findings, Fabeny asserts that the district court erred when it concluded, as a matter of law, that Fabeny's confession was voluntary and not a product of coercion.

█ When reviewing an order denying a motion to suppress evidence, the appellate court will not disturb factual findings supported by substantial evidence, but will exercise free review over the lower court's determination that constitutional requirements have been satisfied in light of the facts found. *State v. Davila*, 127 Idaho 888, 891, 908 P.2d 581, 584 (Ct.App.1995).

█ In determining the voluntariness of a confession, we must look to the characteristics of the accused and the details of the interrogation, including the following:

1. Whether *Miranda* warnings were given;
2. The youth of the accused;
3. The accused's level of education or low intelligence;
4. The length of the detention;
5. The repeated and prolonged nature of the questioning; and
6. Deprivation of food or sleep.

*State v. Troy*, 124 Idaho 211, 214, 858 P.2d 750, 753 (1993); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973). When the statement is made by a juvenile, we must also consider "the child's age, maturity, intelligence, education, experience with police and access to a parent or other supportive adult." *State v. Doe*, 130 Idaho 811, 817, 948 P.2d 166, 172 (Ct.App.1997).

### 1. Findings of average intelligence and maturity

The district court, in making its ruling on Fabeny's motion to suppress, considered the preliminary hearing transcript, two video tapes which recorded Fabeny's waiver of his Miranda rights and all or virtually all of his police interview, the transcripts of those videotapes, the Miranda rights advisory form Fabeny signed, and Fabeny's written statement. The district court, in its memorandum opinion denying the motion to suppress, stated:

There is no evidence that [Fabeny] has significant intellectual short comings. Based upon this Court's review of the audio and videotapes of [Fabeny's] interactions with law enforcement officers, the Court finds that [Fabeny] possesses at least average intelligence and is not immature for his age. Indeed, [Fabeny] exhibited a surprising degree of comfort and familiarity with both law enforcement officers given his custodial status.

Upon our viewing of the video tapes, we conclude that there is support for the district court's finding. Fabeny appears articulate and controlled during his interviews.

Fabeny argues, however, that the state failed to provide any affirmative evidence regarding his intelligence and maturity. Apparently, Fabeny is claiming that the state was required to provide testimony regarding his level of maturity and education. We disagree.

The procedure for establishing whether a confession is voluntary is as follows:

Generally, the prosecution can meet its burden of proving a *prima facie* [case] of voluntariness by eliciting from the interrogating officer that the suspect had not been threatened or promised anything and appeared to freely decide for himself to forego the assistance of counsel, and to provide an incriminating statement. If the defense introduces evidence suggesting official overreaching and a significant impact of that overreaching upon the suspect, of course, the prosecution may well have to respond with more detailed and persuasive evidence in order to meet its burden of persuasion.

C. McCORMICK ET AL., McCORMICK ON EVIDENCE § 151 (John W. Strong ed., 4th ed.1992). *See also Davila*, 127 Idaho at 891, 908 P.2d at 584.

■ In Fabeny's case, the state presented the video tapes of Fabeny's Miranda waiver and the interview that ensued. The police officer interviewing Fabeny did not threaten him or offer false promises. Thus, the state, through the evidence presented, made a prima facie showing that Fabeny's confession was voluntary. The district court viewed Fabeny's initial cooperation as being motivated by his mistaken belief that he could persuade law enforcement that he had no culpable role in the shootings. Fabeny did not rebut this evidence. The state was not required to present live witness testimony or an expert opinion to meet its burden. *See Davila*, 127 Idaho at 891, 908 P.2d at 584 (concluding state need not exclude all possible arguments to meet its burden of proof). Therefore, the district court was correct in applying the law regarding burdens of proof and in making the factual finding that Fabeny was a youth of average intelligence and maturity.

**2. Knowing waiver of Miranda rights**

Fabeny also argues that the district court erred when it concluded that Fabeny knowingly and voluntarily waived his Miranda rights. Fabeny states in his appellant's brief: "In short, the District Court's ruling that Fabeny understood the proceedings and was not placed in a coercive environment is not supported in the record. The videotapes of the interviews do not support the trial court's findings at all."

■ The district court stated:

In view of the totality of the circumstances, this Court concludes that [Fabeny's] waiver of his *Miranda* rights was made voluntarily, knowingly, and intelligently. As noted in this Court's finding of fact, this Court does not find that he was deceived into making statements by false promises that he would be permitted to return home. He was advised orally and in writing of his *Miranda* rights. He expressed an understanding of those rights and chose to waive those rights. The decision to do so was not the product of police coercion or intimidation. Accordingly, the Court finds the waiver of his *Miranda* rights is a valid waiver.

Our appellate review of the record reveals that substantial evidence supports the district court's finding.

Fabeny was arrested and taken to the police station. The transcript of the interview reveals the following conversation took place between Fabeny and the officer:

[Officer]: You can have a seat right here in this nice soft cushy seat there. So how have things been since you were at the Academy?

[Fabeny]: Up until now, great.

[Officer]: Listen. I just need to go over a couple of things. We can talk.

[Fabeny]: Cool.

[Officer]: Have you ever been read your rights before?

[Fabeny]: Yeah, yeah. Except last time you forgot.

[Officer]: OK. I'm going to read these to you and you can read along with me. If you have any questions, ask me.

[Fabeny]: All right.

[Officer]: OK, Number 1, here you have the right to remain silent.

[Fabeny]: OK, I understand that.

[Officer]: You understand that?

[Fabeny]: A haugh.

[Officer]: Anything you say may be used against you in a court of law.

[Fabeny]: I understand that.

[Officer]: OK. You have the right to talk to an attorney or a lawyer and have him present while you are being questioned. A minor child may have his or her parent or guardian present.

[Fabeny]: Yeah, I understand.

[Officer]: You understand that?

[Fabeny]: A haugh.

[Officer]: OK. If you cannot afford to hire a lawyer, one will be appointed to represent you at public expense.

[Fabeny]: I understand that.

[Officer]: OK. You can decide at any time to exercise these rights, and not answer any questions or make any statements.

[Fabeny]: I understand that.

[Officer]: OK, and, go ahead.

[Fabeny]: I understand these rights and having them in mind, I wish to talk to the officer now.

[Officer]: OK. So do you have any questions about this?

[Fabeny]: Nope.

[Officer]: OK, can you explain to me what this means to you?

[Fabeny]: I[t] means anytime I want to, I can say, you know, I want my lawyer or I don't want to talk, or claim the 5th, or anything. And I can, you know, pretty much, tell you what I know.

[Officer]: OK, so having all these rights in mind, do you want to talk to me?

[Fabeny]: Yes, I do.

Fabeny initialed each of the rights he reviewed above and then signed and dated the waiver. The district court found that the officer did not intimidate or coerce Fabeny into signing the waiver. The district court also found that Fabeny had a clear understanding of his rights and all they entailed. Therefore, there is substantial evidence supporting the district court's finding that Fabeny knowingly and voluntarily waived his Miranda rights.

### 3. Voluntariness of confession

 Fabeny asserts that he did not voluntarily confess to the crimes. It is the state's burden to prove, by a preponderance of the evidence, that a statement was made voluntarily. *State v. Carey*, 122 Idaho 382, 384, 834 P.2d 899, 901 (Ct.App.1992). We look to the totality of the circumstances to determine whether the statement was made voluntarily. *State v. Troy*, 124 Idaho 211, 214, 858 P.2d 750, 753 (1993); *State v. Whiteley*, 124 Idaho 261, 268, 858 P.2d 800, 807 (Ct.App.1993). In order to find the statement was not voluntary, the defendant's free will must have been overcome by coercive police conduct at the time of the confession. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26, 93 S.Ct. 2041, 2046–47, 36 L.Ed.2d 854, 861–62 (1973); *State v. Wilson*, 126 Idaho 926, 929, 894 P.2d 159, 162 (Ct.App.1995). If the defendant's free will is undermined by

threats or through direct or implied promises, then the statement is not voluntary and is inadmissible. *Wilson*, 126 Idaho at 929, 894 P.2d at 162.

In Fabeny's case, he was read his Miranda rights, indicated that he understood them, briefly explained what they signified, and then signed a waiver form. Although Fabeny was a juvenile, the district court properly found that he was of at least average intelligence and maturity. Fabeny was detained for interviewing for approximately five hours, from 7:00 p.m. until 12:00 a.m., and went through two distinct interviews with the same officer. The officer did not threaten Fabeny. There is no indication that Fabeny requested food or time to sleep or that he was deprived of either.

In addition, it is apparent from his comments during the interview that Fabeny had experience dealing with police officers. Fabeny was familiar from prior encounters with the officer who conducted the interviews and appeared to be very comfortable speaking with him. Fabeny committed numerous crimes as a juvenile and had extensive contact with the court system.

The totality of the circumstances indicates that Fabeny's statements were voluntary. Fabeny's will was not undermined by any coercive tactics used by the police. The district court found that Fabeny voluntarily confessed to the crimes only after it was clear that he was implicated by other evidence. Therefore, we conclude the district court did not err, as a matter of law, when it determined Fabeny's statements during the interview process were made voluntarily. We affirm the district court's order denying Fabeny's motion to suppress his statements.

## B. Sufficiency of Evidence

Fabeny contends that the evidence does not support the jury's finding of guilt for attempted robbery and attempted murder. Fabeny claims that because he did not shoot anyone and did not take anything from the pawn shop, he could not have been found guilty of those charges.

Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991); *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *Decker*, 108 Idaho at 684, 701 P.2d at 304. Moreover, we will consider the evidence in the light most favorable to the prosecution. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *Decker*, 108 Idaho at 684, 701 P.2d at 304.

### 1. Attempted robbery

Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." I.C. § 18–6501. An attempt to commit a crime occurs when a defendant attempts to commit the crime but fails or is prevented from committing the crime. I.C. § 18–306. Attempt consists of "(1) an intent to do an act ... which would in law amount to a crime; and (2) an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation." W. LaFAVE & A. SCOTT, SUBSTANTIVE CRIMINAL LAW § 6.2 (1986); *See also State v. Otto*, 102 Idaho 250, 251, 629 P.2d 646, 647 (1981); *State v. Gibson*, 106 Idaho 491, 492, 681 P.2d 1, 2 (Ct.App.1984). Thus, the state was required to prove that Fabeny intended to take property from the pawn shop by force and acted in furtherance of that intent to commit the crime.

P.M., a friend of Fabeny's, testified at Fabeny's trial. P.M. testified that Fabeny started talking about robbing the pawn shop on October 1, 1996, and continued to talk about it for the next few days. On October 4, 1996, the day of the shooting, P.M. went to Fabeny's house. P.M. testified:

[P.M.]: James and Steve started talking about the pawn shop, to rob it.

[Counsel]: Who brought it up?

[P.M.]: Steve did.

[Counsel]: And what was Mr. Burnight's response to that?

[P.M.]: He was going along in agreement with everything that Steve was saying.

[Counsel]: Did they approach you about participating in robbing the pawn shop?

[P.M.]: Yes.

[Counsel]: How did that come about?

[P.M.]: Steve said it would be a lot easier if we had three people instead of just two. And then he started talking about how James and I would go in, walk in the pawn shop, and he'd go in the back. And James would not ask any questions, don't ask for money or nothing, and just start putting caps in them, is what he told James he was going to do. And he said that if anybody went for the phone or tried to go out the front door, that I was to stab them. And if anybody tried to go out the back, then Steve was going to stab them.

P.M. further testified that he then told Fabeny he would not participate.

■ P.M. did testify, however, that he walked part of the way to the pawn shop with Fabeny and Burnight because he was on his way to work. During the walk, Fabeny loaded the gun and continued to berate P.M., calling him names because P.M. refused to help. Fabeny told P.M. that he was not earning his "tats," which apparently meant P.M. was not earning his membership into the gang Fabeny had allegedly created. P.M. testified that Fabeny gave the gun to Burnight and instructed him to hide the gun, and then P.M. departed from the two and went to work.

The officer who interviewed Fabeny testified that Fabeny told him he planned to shoot and kill the people inside the pawn shop and steal merchandise. According to the officer, Fabeny told him that Fabeny was supposed to cough when the time was right as a signal to Burnight to start shooting. Burnight did not pull the trigger after the first cough. Fabeny persisted and coughed again. Burnight froze momentarily, but then began shooting. Fabeny and Burnight fled the scene without taking any merchandise.

The above is sufficient evidence to uphold the jury verdict. The testimony demonstrates that Fabeny intended to take property from the pawn shop by force. Fabeny committed acts in furtherance of that intent when he entered the pawn shop and gave the signal to Burnight to start shooting, thus instituting the use of force. Fabeny did not complete the robbery by actually taking merchandise, but his actions are sufficient to sustain a verdict for attempted robbery.

### 2. Attempted murder

The jury found Fabeny guilty on two counts of attempted murder, one for the attempted murder of Terry Stewart and the second for the attempted murder of Justin Stewart. Murder is the unlawful killing of another human being with malice aforethought. I.C. § 18–4001. As noted above, an attempt to commit a crime occurs when a defendant takes actions in furtherance of a crime, beyond mere preparation, but in the end fails or is prevented from committing the crime. I.C. § 18–306.

■ If a person aids and abets an attempted murder, the person is guilty as a principal. I.C. § 18–204. Aiding and abetting requires some proof that the accused either participated in or assisted, encouraged, solicited, or counseled the commission of the crime. *State v. Randles*, 117 Idaho 344, 347, 787 P.2d 1152, 1155 (1990). Thus, in order to prove Fabeny guilty of attempted murder, the state had to show that Fabeny had the requisite intent to kill the Stewarts and acted in furtherance of that intent by encouraging Burnight to enter the store and shoot them.

■ The evidence cited above regarding the conviction for attempted robbery also supports Fabeny's convictions for attempted

murder. Fabeny planned for days in advance to shoot people inside the pawn shop. On the day of the incident, Fabeny pressured Burnight into committing the crimes and tried to involve a third accomplice, P.M., but P.M. refused. Fabeny loaded the gun and gave Burnight specific instructions to shoot the Stewarts when Fabeny signaled that the time was right. Fabeny gave the signal twice, and Burnight carried through with the obligation Fabeny placed on him. Burnight shot the Stewarts, Terry in the head and Justin in the chest, and then he and Fabeny fled. This is sufficient evidence to show that Fabeny had the requisite intent to kill a human being and then acted in furtherance of that intent by encouraging Burnight to carry through with the plan. Therefore, there is sufficient evidence to sustain the jury's guilty verdicts on two counts of attempted murder.

## C. Sentence Review

Fabeny claims that his minimum period of confinement of fifteen years is excessive in light of the circumstances of his case. Fabeny asserts that he is less culpable because he did not pull the trigger.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 645 P.2d 323 (1982). A sentence of confinement is reasonable, however, if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence we conduct an independent review of the record, having regard for the nature of the offense, the char-

acter of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). When reviewing a sentence imposed under the Unified Sentencing Act, we treat the minimum period specified by the sentencing judge as the probable period of confinement. *State v. Hodge*, 124 Idaho 927, 929, 866 P.2d 184, 186 (Ct.App.1993). In this case, Fabeny was found guilty of two counts of attempted murder, one count of attempted robbery and one count of grand theft by possession of stolen property. The district court sentenced Fabeny to fifteen years fixed for attempted first degree murder; consecutive indeterminate terms of fifteen years for attempted first degree murder and attempted robbery; and a concurrent fixed term of fourteen years for grand theft by possession of stolen property, for a total unified term of forty-five years, with fifteen years fixed.

At sentencing, the district court stated:

I just look at your history and, despite your relatively young age, I agree with the state that your juvenile history is significant. Although in terms of what we would characterize as serious crime, you only have one on your record, that is the 1996 aggravated assault, the history of probation violations as a juvenile, the dysfunctional behavior that you demonstrated in school speaks poorly of your prospects for rehabilitation.

I really didn't need a psychological evaluation to tell me that you have an oppositional defiant disorder. All you have to do is watch a little bit of the taped interview that you had with [the officer].

. . . .

In terms of deterrence, I don't think any sentence I am going to impose upon you will have a specific deterrent effect and that isn't a factor I'm considering. In fact, I'm a little bit concerned of the opposite. I'm concerned that my sentence will allow you to somehow derive some sense of self-worth by the length of sentence that I'm going to impose. That you'll measure yourself, how big a person you are, by the length of sentence I'll impose in this case.

But I think to our population as a whole, this sentence will send a message. In

particular I think the sentence that I'm going to impose in this case will send a message to a subgroup in our society, and that's little gangbanger wannabes like you. Kids that might think they can get some sort of stature, they might impress other folks by engaging in this sort of behavior. If any sentence in this case can have any effect on those folks, then it will have served its intended purpose.

In terms of punishment, of course, as the state's pointed out, this was a premeditated crime. You obtained a weapon by theft. You gave it to your buddy. You encouraged him. And you are every bit as responsible for the injuries that were inflicted on Justin and Terry Stewart as is Mr. Burnight.

I agree with Justin Stewart, at least in the letter that he sent to me. You really don't have much respect for other people. You don't have any respect for human life. And the fact is that you set out to kill two folks, who had never done anything wrong to you, never given any offense to you, apparently only because you viewed them as vulnerable and that somehow you could get away with this. Of course, it appears to me the Stewarts weren't the only folks on your hit list with Mr. Burnight that day.

. . . .

In terms of protection of society, of course, I've got to look at your psychological profile. And, of course, when I look at your psychological profile, that causes me grave concerns. The statement that you have serious psychological problems is a gross understatement. I know you're impulsive. The prosecutor seized on some phrases that really leapt out at me in terms of discussing your behavior as reflective of shortsighted hedonism, a search for excitement and stimulation and a marked disinclination to restrain your impulse.

. . . .

I really don't know if you'll ever be an acceptable risk for reintroduction into our society, but it is my goal through sentencing, after an appropriate measure of punishment has been served, to leave it to the discretion of the Parole Board to permit you to be reintroduced into society under the strictures and structure that would be provided by parole.

The district court considered each of the goals of sentencing and determined that Fabeny posed a grave danger to society and that he was not a good candidate for rehabilitation. The district court weighed those concerns with Fabeny's young age and concluded that fifteen years fixed, to be followed by thirty years indeterminate, would insure that Fabeny be punished for the heinous crimes he committed, but that he would be allowed an opportunity to prove he has reformed to the Parole Commission. The sentence structured in this case is not unreasonable given Fabeny's persistent criminal behavior and the manner in which he carried out these crimes. Therefore, the district court did not abuse its discretion and the sentence is affirmed.

## III.

## CONCLUSION

We affirm the district court's order denying Fabeny's motion to suppress, concluding that Fabeny knowingly and voluntarily waived his Miranda rights and confessed to the crimes. We also conclude that the evidence is sufficient to uphold the attempted robbery and attempted murder convictions. Finally, we conclude the district court did not abuse its discretion when it sentenced Fabeny to a total of forty-five years of incarceration, with fifteen years fixed. Therefore, we affirm Fabeny's judgments of conviction and sentences.

Judge LANSING and Judge SCHWARTZMAN, concur.