**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43464**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Unpublished Opinion No. 732** |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Filed: October 17, 2016** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **GUNNAR LIAM BREYMANN,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Respondent.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Barbara A. Buchanan, District Judge.

Order granting motion to suppress, <u>reversed</u> and <u>case remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Theodore S. Tollefson, Deputy Attorney General, Boise, for appellant.

Eric D. Fredericksen, Interim State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for respondent.

---

GUTIERREZ, Judge

The State appeals from the district court's order granting Gunnar Liam Breymann's motion to suppress all evidence found during the warrantless search of his bedroom and all statements made without the benefit of *Miranda*[1] warnings. Specifically, the State argues the district court erred when it determined Breymann's confession and consent to search were involuntary and the officer's *Miranda* warnings were ineffective. For the reasons explained below, we reverse the district court's order and remand for further proceedings.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2015, Breymann's father called dispatch to report a burglary in his home. An officer visited the home and discovered what appeared to be methamphetamine paraphernalia in the backyard. Breymann's father expressed concern about his son's prior drug use to the officer and suggested Breymann, who was nineteen at the time and lived with his parents, was involved in the burglary.

Five days later, the officer returned to the home and saw Breymann walking down the street. The officer approached Breymann and told him that the officer needed to speak with Breymann about the burglary at his home. Breymann stated that he believed another young man was responsible for the burglary. Breymann informed the officer that Breymann had not been in trouble with the law for over two years. He noted that the burglary had caused him stress and he had difficulty eating. In response, the officer asked Breymann if he fell off the wagon and started using drugs again. Breymann admitted he had been smoking "a little bit of weed here and there." The officer asked whether the methamphetamine paraphernalia in the backyard belonged to Breymann, and Breymann indicated it did not. The officer asked whether Breymann had drugs or drug paraphernalia in his bedroom, and the officer asked if he could search Breymann's bedroom. Breymann responded that he had marijuana and marijuana paraphernalia in his bedroom but refused to allow the officer to search the bedroom. The officer again asked whether he could search the bedroom to reassure Breymann's father that there was nothing in the bedroom, but Breymann again denied consent to search. Breymann insisted he did not want his bedroom searched, but offered to bring all the marijuana and marijuana paraphernalia to the officer's patrol vehicle.

Both the officer and Breymann went to the house, where Breymann's mother was present. The officer informed her that, based on Breymann's admission of marijuana and marijuana paraphernalia in his bedroom and the methamphetamine paraphernalia items found in the backyard, the officer could obtain a search warrant but would rather not go through the process. The officer continued to question Breymann while he denied consent to search his bedroom. The officer handcuffed Breymann and indicated that he was not under arrest but was detained while the officer obtained a search warrant. Breymann admitted to the presence of

2

methamphetamine paraphernalia in his bedroom. Breymann began crying and stated he could not go back to jail.

Soon after, Breymann announced, "you want to go search my room? Go for it. You can go search my room right now. Go for it." Backup arrived and remained outside while the officer escorted the handcuffed Breymann to the patrol vehicle. Breymann cried in the back of the patrol vehicle and indicated he understood his rights. The officer then administered *Miranda* warnings and gave Breymann a consent to search form, which Breymann filled out. The officer asked Breymann, "so you're saying all I'm going to find is that bong, some empty baggies, and a meth pipe?" Breymann responded, "and an old dope pipe and a small little red glass dope bong that my buddy gave me a while ago." The officer, the backup officer, and Breymann entered the home. The officer searched Breymann's bedroom and discovered small bags of marijuana, paraphernalia with marijuana residue, small bags of methamphetamine, and paraphernalia with methamphetamine residue.

The State charged Breymann with possession of methamphetamine, Idaho Code § 37-2732(c)(1). Breymann filed a motion to suppress all evidence found during the warrantless search of his bedroom and the confessions. The district court granted Breymann's motion to suppress, ruling Breymann's confessions and consent to search were involuntary, and all evidence seized was therefore inadmissible.

On appeal, the State argues the district court erred in granting Breymann's motion to suppress. The State maintains the district court erred in determining that Breymann's confessions and consent to search were involuntary.

## II.

## ANALYSIS

The standard of review of a suppression motion is bifurcated. This Court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found. *State v. Holland*, 135 Idaho 159, 161, 15 P.3d 1167, 1169 (2000); *State v. Spencer*, 139 Idaho 736, 738, 85 P.3d 1135, 1137 (Ct. App. 2004). At a suppression hearing, the power to assess the credulity of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## A. Confessions

The district court determined that Breymann's pre-*Miranda* confession was inadmissible because it was involuntary. The use of an involuntary statement against a criminal defendant violates the Due Process Clause. *Miller v. Fenton*, 474 U.S. 104, 109-10 (1985); *Haynes v. Washington*, 373 U.S. 503, 514-15 (1963); *State v. Hays*, 159 Idaho 476, 485, 362 P.3d 551, 560 (Ct. App. 2015). The exclusionary rule applies to any confession that was the product of police coercion, either physical or psychological, or that was otherwise obtained by methods offensive to due process. *Miller*, 474 U.S. at 109-10; *Haynes*, 373 U.S. at 514-15; *State v. Doe*, 130 Idaho 811, 814, 948 P.2d 166, 169 (Ct. App. 1997). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

To determine whether a confession is voluntary, a court must examine the totality of circumstances and ask whether the defendant's will was overborne by police conduct. *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991); *State v. Troy*, 124 Idaho 211, 214, 858 P.2d 750, 753 (1993); *State v. Valero*, 153 Idaho 910, 912, 285 P.3d 1014, 1016 (Ct. App. 2012). In determining the voluntariness of a confession, a court should consider the characteristics of the accused and the details of the interrogation, including whether *Miranda* warnings were given,[2] the youth of the accused, the accused's level of education or low intelligence, the length of the detention, the repeated and prolonged nature of the questioning, and the deprivation of food or sleep. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Troy*, 124 Idaho at 214, 858 P.2d at 753; *Valero*, 153 Idaho at 912, 285 P.3d at 1016. The presence or absence of *Miranda* warnings is a particularly significant factor. *Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004) ("[M]aintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver."); *Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare."). While one's "mental condition is surely relevant to an individual's susceptibility to police coercion," it cannot alone make a statement involuntary. *Connelly*, 479

---

[2]      In *Miranda*, the United States Supreme Court held that anyone in custody must be informed of his or her rights before interrogation.

4

U.S. at 165; *see also State v. Doe*, 131 Idaho 709, 713, 963 P.2d 392, 396 (Ct. App. 1998). If, under the totality of circumstances, the defendant's free will was overborne by threats, through direct or implied promises or other forms of coercion, then the statement is not voluntary and is inadmissible. *Fulminante*, 499 U.S. at 285-87; *Troy*, 124 Idaho at 214, 858 P.2d at 753; *Valero*, 153 Idaho at 912, 285 P.3d at 1016. When a defendant alleges an interrogation is coercive, the State bears the burden of proving voluntariness of the defendant's confession by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *State v. Yager*, 139 Idaho 680, 685, 85 P.3d 656, 661 (2004); *State v. Johns*, 112 Idaho 873, 878, 736 P.2d 1327, 1332 (1987).

In its reasoning, the district court considered the totality of circumstances and noted the absence of *Miranda* warnings, Breymann's age, the repeated and prolonged nature of the questioning, and Breymann's mental condition--as reflected by his anxious and stressful state and his crying. Such circumstances, according to the district court, demonstrated that Breymann's will was overborne by police conduct.

While the age of the accused is certainly a consideration, this factor is more compelling in the case of juveniles because the voluntariness of juvenile confessions must be evaluated with "special care." *Haley v. Ohio*, 332 U.S. 596, 599 (1948). For instance, in *Doody v. Schriro*, 548 F.3d 847, 867 (9th Cir. 2008), the Ninth Circuit analyzed the voluntariness factors and emphasized the defendant's age--seventeen--noting that his youth made him vulnerable. *Id.* The court also pointed out that the defendant had never been arrested before and had never heard of *Miranda* rights. *Id.* On the other hand, in *Davis v. United States*, 724 A.2d 1163, 1168 (D.C. 1998), the court considered that the defendant was eighteen and had been arrested on three previous occasions in ultimately holding that his confession was voluntary. Here, Breymann was a nineteen-year-old adult, just a few months shy of his twentieth birthday. The record makes clear that Breymann had been in trouble with the law before and had been administered *Miranda* rights prior to this incident. In addition, Breymann confirmed he knew his rights immediately before the officer administered the *Miranda* warnings. The age factor therefore weighs against a finding of coercion.

The district court viewed the repeated and prolonged nature of the questioning as coercive. In *State v. Fabeny*, 132 Idaho 917, 923, 980 P.2d 581, 587 (Ct. App. 1999), we concluded the defendant's confession was voluntary, reasoning in part that the defendant was questioned for approximately five hours. Here, however, the defendant was questioned for

5

approximately thirty minutes before he was handcuffed. He was questioned for another twelve minutes before being taken by the officer to the patrol vehicle to fill out a consent to search form and administer *Miranda* warnings. Throughout this encounter, the record reflects that the officer was respectful and patient toward Breymann, tried to calm him down when he started crying, let him sit down, and loosened the handcuffs after he complained they were too tight. In sum, the nature and duration of the questioning does not indicate coercive tactics were employed by the officer.

The district court also considered Breymann's mental and emotional condition as a factor that made him susceptible to police coercion. The district court referred specifically to Breymann's crying and being distraught during the incident. An emotional reaction is inherent in any arrest or detainment. *See, e.g.*, *United States v. Stewart*, 536 F.3d 714, 723 (7th Cir. 2008) ("[The defendant's] emotional reaction to the entry of the FBI into the investigation is hardly evidence of coercive interrogation tactics and does not by itself call into question the voluntariness of his pre-*Miranda* statement."); *see also State v. Aitken*, 121 Idaho 783, 785, 828 P.2d 346, 348 (Ct. App. 1992) ("There was no evidence, beyond the mere fact that [the defendant] was in custody, from which the court could conclude [the defendant] had been subjected to other than the normal duress inherent in any arrest."). Here, the record does not suggest Breymann's stress or anxiety prevented him from making a rational decision. "So long as the defendant is mentally capable of understanding the meaning and consequences of his statements, a mental disturbance will not necessarily preclude the admissibility of a confession." *State v. Powers*, 96 Idaho 833, 840, 537 P.2d 1369, 1376 (1975). Without any indication that Breymann was unable to understand the meaning and consequences of his confession, his anxiousness, stress, and crying does not suggest Breymann's confession was coerced.

Lastly, the district court highlighted the fact that Breymann confessed before the officer administered *Miranda* warnings. As noted, the presence or absence of *Miranda* warnings is a significant factor in the analysis. But "the failure to provide Miranda warnings in and of itself does not render a confession involuntary." *New York v. Quarles*, 467 U.S. 649, 655 n.5 (1984). This is the only factor that weighs in favor of coercion.[3] The totality of circumstances indicates

---

[3]     The district court did not address the following factors: the accused's level of education or low intelligence, the length of the detention, and deprivation of food or sleep. Neither the State nor Breymann discussed the other factors in their briefs. However, two of these three

that Breymann's confession was voluntary. Accordingly, the district court erred in determining that Breymann's confession was inadmissible.

The district court also ruled that Breymann's post-*Miranda* confession about the presence of paraphernalia in his bedroom was inadmissible due to the intensity of the questioning that Breymann experienced and his "fragile demeanor." The State argues on appeal that the district court erred because it failed to consider the totality of circumstances in determining whether Breymann voluntarily, knowingly, and intelligent waived his *Miranda* rights.

*Miranda* safeguards are implicated when a person in custody is subjected to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). A waiver of *Miranda* rights or the underlying constitutional privilege against self-incrimination must be made knowingly, voluntarily, and intelligently. *Oregon v. Elstad*, 470 U.S. 298, 309 (1985); *State v. Dunn*, 134 Idaho 165, 169, 997 P.2d 626, 630 (Ct. App. 2000). The State bears the burden of demonstrating that an individual has knowingly, voluntarily, and intelligently waived his rights by a preponderance of the evidence. *Doe*, 131 Idaho at 712, 963 P.2d at 395. An appellate review of this waiver issue encompasses the totality of the circumstances. *Dunn*, 134 Idaho at 169, 997 P.2d at 630. The test of voluntariness is whether, under the totality of the circumstances, the suspect's will was overborne by police coercion. *Fulminante*, 499 U.S. at 286; *Connelly*, 479 U.S. at 163-67; *State v. Radford*, 134 Idaho 187, 191, 998 P.2d 80, 84 (2000); *State v. Davila*, 127 Idaho 888, 892, 908 P.2d 581, 585 (Ct. App. 1995). The factors the Court must consider are the same factors listed above: whether *Miranda* warnings were given, the youth of the accused, the accused's level of education or low intelligence, the length of the detention, the repeated and prolonged nature of the questioning, and the deprivation of food or sleep. *State v. Adamcik*, 152 Idaho 445, 468, 272 P.3d 417, 440 (2012).

As discussed, Breymann's age weighs against a finding of coercion because he is an adult who has been in trouble with the law in the past. The factor concerning the nature of the questioning does not indicate the officer employed coercive tactics. The district court referred to

---

factors do not appear helpful--there is no indication that Breymann was sleep or food deprived and neither party set forth evidence regarding Breymann's intelligence or education. As for the length of detention, Breymann was only detained for twelve minutes once the officer handcuffed Breymann in his parent's house. Accordingly, the length of detention does not support a finding of coercion.

the questioning as "intense," but even assuming the questioning was intense does not necessarily render the questioning coercive. Moreover, the record does not suggest that Breymann's "fragile demeanor" hindered his ability to understand the meaning and consequences of his waiver. The totality of circumstances therefore demonstrates Breymann's will was not overborne by police coercion. Breymann voluntarily, knowingly, and intelligently waived his *Miranda* rights.

**B.     Consent to Search**

The district court determined Breymann's consent to search was also the result of duress and coercion and was therefore inadmissible. The United States and Idaho Constitutions prohibit unreasonable searches and seizures of persons or property.[4] U.S. CONST. amend. IV; IDAHO CONST. art. 1, § 17. Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995); *State v. Smith*, 152 Idaho 115, 118, 266 P.3d 1220, 1223 (Ct. App. 2011). The State may overcome this presumption by demonstrating that a warrantless search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Schmerber v. California*, 384 U.S. 757, 767-69 (1966); *Weaver*, 127 Idaho at 290, 900 P.2d at 198.

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent--an exception to the warrant requirement. *Schneckloth* 412 U.S. at 219; *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth*, 412 U.S. at 248; *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *Schneckloth*, 412 U.S. at 227; *State v. Hansen*, 138 Idaho 791, 796, 69 P.2d 1052, 1057 (2003).

---

[4]     Breymann does not argue the Idaho Constitution affords greater protection, so this Court follows the analysis pursuant to the Fourth Amendment to the United States Constitution.

8

A determination of voluntariness is not dependent "on the presence or the absence of a single controlling criterion." *Schneckloth*, 412 U.S. at 226. Factors to be considered include whether there were numerous officers involved in the confrontation; the location and conditions of the consent, including whether it was at night; whether the police retained the individual's identification; whether the individual was free to leave; and whether the individual knew of his right to refuse consent. *State v. Garcia*, 143 Idaho 774, 778, 152 P.3d 645, 649 (Ct. App. 2006).

In determining that Breymann's consent to search was the result of duress and coercion, the district court relied on the same factors considered in addressing the voluntariness of Breymann's confession. Looking at the totality of circumstances, however, reveals that Breymann's consent to search was voluntary. For instance, when Breymann first gave the officer consent to search the bedroom, only the one officer was involved. The backup officer did not arrive until after Breymann gave consent to search his bedroom. His mother was present and interacted with the officer and Breymann periodically. Moreover, the incident occurred during the day. Breymann was obviously aware of his right to refuse consent because he refused consent several times before eventually granting consent. While the officer gave Breymann a choice between granting consent and obtaining a search warrant, that does not constitute coercion. *Garcia*, 143 Idaho at 779, 152 P.3d at 650 ("[I]t should be noted that bowing to events, even if one is not happy with them, is not equivalent to being coerced. The voluntariness of consent is not impaired simply because one is faced with two unpleasant choices--which here . . . was choosing between consenting to search and allowing the marijuana in his trunk to be discovered . . . ."). Based on the totality of circumstances, we conclude Breymann's consent to search was voluntary.

### III.

### CONCLUSION

The district court erred in granting Breymann's motion to suppress all evidence found during the search of his bedroom and statements made because Breymann's confessions and consent to search were voluntary. Accordingly, we reverse the district court's memorandum decision and order granting Breymann's motion to suppress and remand for further proceedings.

Judge GRATTON and Judge HUSKEY **CONCUR**.

9