917 P.2d 1316

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Louis Andrew MONROE, Defendant–Appellant.**

**No. 22038.**

Court of Appeals of Idaho.

June 4, 1996.

Alan E. Trimming, Ada County Public Defender; Steven A. Botimer, Deputy Public Defender, Boise, for appellant.

Alan G. Lance, Attorney General; Catherine O. Derden, Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

██ Louis Andrew Monroe appeals from his judgment of conviction after a jury trial for battery with intent to commit a serious felony. I.C. §§ 18–903, –911. Monroe was sentenced to a fifteen-year determinate term of incarceration. We affirm.

## I.

### FACTS

The facts adduced at trial were that Monroe and the victim's mother, B.B., had been neighbors and acquaintances years ago. After meeting by chance at a local bar on the evening of April 17, 1994, B.B. invited Monroe to her home because Monroe had indicated he might have a job for her son. The only persons at home were her thirteen-year-old daughter, R.B., and two-year-old niece, who were watching television in the living room. B.B. and Monroe sat down to wait for B.B.'s son, and shortly thereafter, B.B. fell asleep on the couch.

R.B. testified that Monroe went upstairs to use the bathroom, returned to the living room, then asked R.B. where the towels were. Although R.B. explained that the towels were on an open shelf in the upstairs hallway, Monroe insisted that R.B. go upstairs and show him. R.B. went up the stairs, got a towel and turned to find Monroe had followed her. Monroe blocked the hall and confronted R.B. at the door to her bedroom, put his hand on her shoulder, pushed her into the bedroom where he pointed to the

bed, stating "Right here would be fine." All of R.B.'s things that were on her bed had been tossed onto the floor and the covers had been pulled back. R.B. was afraid of what Monroe had in mind. She repeated "No, No" and began screaming to wake her mother. Monroe tried to cover her mouth to stifle her screams. R.B. was able to get around Monroe and ran, screaming, away from him down the stairs toward the back door of the house. B.B. testified that as soon as she was able to get R.B. to tell her what was the matter, B.B. looked for Monroe and saw him walking very fast down the road.

Monroe was indicted, tried by a jury and found guilty of one count of battery with intent to commit a serious felony. A judgment of conviction and commitment to serve a fixed term of fifteen years' confinement was entered on April 3, 1995. Monroe appealed, raising issues concerning the admissibility of evidence, insufficiency of evidence to support the verdict and his sentence.

## II.

### DISCUSSION

### 1. Admissibility of Victim's Statements

██ First, Monroe argues that the district court should not have allowed Officer Frogley or B.B. to testify as to what the victim, R.B., told them independently about the events of April 17, 1994. Monroe asserts that the district court improperly relied on the excited utterance exception to the hearsay rule because the accounts given to the officer and to B.B. were too far removed from the event.

Monroe's argument is not well taken, particularly with respect to B.B.'s testimony relating R.B.'s story as told to B.B. immediately after R.B. stopped screaming. In overruling Monroe's objection to Officer Frogley's testimony, the district court explained that I.R.E. 803 does not require that the declarant be unavailable but does require that the statement be made while the declarant was under the stress of excitement

caused by the event or condition. The district court found that the victim was still upset when she made the statement to Officer Frogley and that the statement was made within a reasonable period of time after the event while the victim was still operating under the stress of the event.

■ The analysis to be applied in determining whether the victim's out-of-court statement is admissible is prescribed by I.R.E. 803. *State v. Stover*, 126 Idaho 258, 262–63, 881 P.2d 553, 557–58 (Ct.App.1994). "The appropriate inquiry is whether the statement was a spontaneous reaction to the occurrence or event and not the result of reflective thought." *Id.* at 263, 881 P.2d at 558. In making this discretionary determination, the trial court reviews the totality of the circumstances, focusing upon the nature of the startling event and the demeanor of the declarant when making the statement. *Id.* at 263–64, 881 P.2d at 558–59.

In the instant case, Officer Frogley described R.B.'s emotional state when he arrived at the home to investigate the report of a possible battery. Because R.B. was very obviously upset and still seemed in an excited state, Officer Frogley testified that he took some time to calm her down. He further testified that it appeared R.B. had been crying and still seemed pretty worked up, but she was eventually able to relate an account of what had happened. We conclude that there was sufficient evidence to support the district court's finding that R.B.'s statements, made first to her mother, B.B., and then to Officer Frogley within an hour of the event, were the product of her distress, not reflective thought. We hold that the district court did not abuse its discretion in admitting R.B.'s statements as excited utterances.

## 2. Admissibility of Photograph

■ Monroe also claims that the district court erred in admitting a photograph of Monroe at trial. The argument in Monroe's appellate brief, however, asserts that he was denied due process of law by virtue of the police's use of a single photo lineup to obtain an identification of the perpetrator from the victim. Monroe claims that the resulting identification was so suggestive as to lead to irreparable harm of misidentification, and therefor the photograph should not have been admitted into evidence.

The district court sustained Monroe's objection to the admission of the photograph during the testimony of Officer Byrd, indicating that the state needed to lay more foundation with a description of Monroe from a witness. The district court found that this was not a case of an impermissible lineup and that identity was not at issue because the people involved knew each other. Holding that the photograph was not relevant, the district court then responded to the state's motion to introduce the photograph merely to establish what Monroe looked like in April 1994. The district court advised that a photograph purporting to show what the perpetrator looked like at the time of the incident would be admissible "so long as a person with knowledge can state that the person in the photograph is someone that this [witness] can identify at the same time of the events." After B.B. testified that Monroe was pictured in the photograph and that the photograph represented how he looked on April 17, 1994, the district court admitted the photograph over Monroe's renewed objection.

The prosecutor argued that the showing of the photograph to B.B. and R.B. by the officer during his interview with the victim and her mother served to verify Monroe's physical appearance on the evening of the incident. As the district court correctly noted, there was no question of a photo lineup to identify the perpetrator. We therefore restrict our review to whether the district court erred in admitting the photograph.

The district court acknowledged that the foundational requirements necessary to verify the photograph were met through the testimony of B.B., a person familiar with the person depicted in the photograph. We hold that the admission of the photograph of Monroe for the limited purpose to show how he looked in April 1994 was not an abuse of the district court's discretion.

### 3. Sufficiency of Evidence

Monroe contends that there was insufficient evidence to support the jury's verdict of guilty for the offense of battery with intent to commit a serious felony because of a complete failure of proof of any intent by Monroe to commit either the crime of rape or lewd conduct with a minor. Accordingly, Monroe argues that the district court erred in denying his motion for judgment of acquittal pursuant to I.C.R. 29(c).

In reviewing the denial of a motion for judgment of acquittal, the appellate court must independently consider the evidence in the record and determine whether a reasonable mind would conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt. *State v. Kopsa,* 126 Idaho 512, 887 P.2d 57 (Ct.App.1994); *State v. Printz,* 115 Idaho 566, 768 P.2d 829 (Ct.App.1989). This Court will not substitute its view for that of the jury as to the credibility of witnesses, the weight to be given to the testimony, or the reasonable inferences to be drawn from the evidence. *State v. Knutson,* 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App.1991). In making this determination, all reasonable inferences are taken in favor of the state. *Kopsa,* 126 Idaho at 521, 887 P.2d at 66; *Printz,* 115 Idaho at 567, 768 P.2d at 830.

First, we address Monroe's contention that there was no proof of intent and, therefore, insufficient evidence to sustain the verdict. The intent of the accused is a question of fact for the jury to determine. *State v. Bolton,* 119 Idaho 846, 851, 810 P.2d 1132, 1137 (Ct.App.1991), *citing State v. Atwood,* 105 Idaho 315, 319, 669 P.2d 204, 208 (Ct. App.1983). A jury may infer intent from the commission of acts and the surrounding circumstances. *State v. Nastoff,* 124 Idaho 667, 671, 862 P.2d 1089, 1093 (Ct.App.1993). *See also* I.C. § 18–115.

As discussed above, R.B.'s testimony describing Monroe's ruse to get her upstairs and his actions which traumatized R.B. provided support for the jury's finding that Monroe had committed battery with intent to commit rape or lewd conduct with a minor. The jury could reasonably conclude that, by successfully getting away from Monroe, R.B. fortunately escaped being a victim of rape or lewd conduct. Viewing this evidence in the light most favorable to the state, we conclude that Monroe has not demonstrated that there was insufficient evidence to support the jury's finding of guilt.

Monroe also argues that the jury "ignored" the evidence presented by Lynn Benson. Benson and her two daughters testified on behalf of Monroe. Benson testified that she had been in B.B.'s home with Monroe on April 17, 1994. She disputed that Monroe had encountered B.B. where B.B. said they had met, and Benson denied that Monroe had ever gone upstairs in B.B.'s home. Benson's description of B.B.'s living room was inaccurate, and she was unable to describe in any way the physical appearance of B.B.'s daughter, who at all times was in the living room. The jury chose to believe B.B. and R.B. and discounted Benson's testimony. We will not second-guess the jury's determination on appeal. Therefore, we uphold the district court's decision not to disturb the jury's verdict pursuant to Monroe's motion for acquittal.

### 4. Excessiveness of Sentence

Monroe's final issue on appeal challenges the length of his sentence. He asserts that the district court abused its discretion in imposing a fixed term of fifteen years for battery with intent to commit a serious felony.

Using the approach set forth in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), we review the relationship of the nature of the offense and the character of the offender in light of the primary sentencing goal of societal protection and the related goals of deterrence, rehabilitation and retribution. To establish that the sentence imposed was improper, the defendant must show in light of the governing criteria that the sentence was excessive under any rea-

sonable view of the facts. *Id.*, at 568–69, 650 P.2d at 710–11.

At sentencing, Monroe's criminal history was revealed to the district court through a presentence investigation report. The district court found Monroe to be a multiple offender, with a prior conviction of voluntary manslaughter for the death of his father and a conviction for malicious wounding of a woman by stabbing her nineteen times in the face, arms and hands. For the killing of his father, Monroe had originally pled guilty to first degree murder, but that conviction was overturned on appeal because Monroe's confession was obtained after he invoked his right to counsel. *See State v. Monroe*, 103 Idaho 129, 645 P.2d 363 (1982). Prior to sentencing in the present case, Monroe had written to the district court, lying about his prior offenses, which led the court to conclude that Monroe refused to face up to his problems and was a high risk to reoffend. The district court concluded that Monroe should not be free in society. In its comments at sentencing, the district court recognized that the potential for serious harm, given Monroe's history, was great, although this was a case in which the victim escaped serious harm.

Arguably, the nature of the instant offense, standing alone, may not justify a fixed term of fifteen years. However, our review must take into account Monroe's character and criminal record. It is appropriate for a court to consider a defendant's past criminal history when fashioning a sentence. *State v. Barnes*, 121 Idaho 409, 825 P.2d 506 (Ct.App. 1992). In light of Monroe's history of violent criminal conduct, we conclude that Monroe has not shown the sentence to be excessive under any reasonable view of the facts. *State v. Charboneau*, 124 Idaho 497, 499, 861 P.2d 67, 69 (1993); *State v. Toohill*, 103 Idaho at 568, 650 P.2d at 710. We hold, therefore, that the district court acted within its sentencing discretion in imposing a fifteen-year fixed sentence.

## III.

## CONCLUSION

The district court did not err in invoking the excited utterance exception to the hearsay rule to admit the out-of-court statements of R.B. through the testimony of Officer Frogley and that of B.B. Further, the admission of Monroe's photograph, as he looked at the time of the incident, was within the district court's discretion. We hold that there was a reasonable view of the evidence to support the jury's finding that Monroe committed battery with intent to commit either a rape or lewd conduct with a minor. We also hold that the sentence imposed was not excessive.

We affirm the judgment of conviction and the sentence of fifteen years fixed for battery with intent to commit a serious felony.

WALTERS, C.J., and LANSING, J., concur.