12 P.3d 382

STATE of Idaho, Plaintiff–Appellant,

v.

Hector Auxilio GONZALEZ,
Defendant–Respondent.

No. 24990.

Court of Appeals of Idaho.

Aug. 16, 2000.

Review Denied Nov. 7, 2000.

Hon. Alan G. Lance, Attorney General; Alison A. Stieglitz, Deputy Attorney General, Boise, for appellant. Alison A. Stieglitz argued.

Ronaldo A. Coulter, State Appellate Public Defender; Richard J. Hansen, Deputy Appellate Public Defender, Boise, for respondent. Richard J. Hansen argued.

SCHWARTZMAN, Judge.

The state appeals from the district court's order granting Hector Auxilio Gonzalez's motion for a judgment of acquittal on a conviction for voluntary manslaughter tried under an aiding and abetting theory. We vacate the order granting the judgment of acquittal.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

According to the evidence presented by the state, the facts are as set forth below. At about 1:00 a.m. on May 17, 1997, Hector Auxilio Gonzalez, his wife Marcia, Eulalio Vasquez and his wife Elizabeth, and Teresa Coffey returned to Gonzalez's apartment in Blackfoot, Idaho, after an evening drinking, dancing and using methamphetamine. Shortly thereafter, Antonio Panteras Rodriguez, Saul Olguin Villegas and Trena Baird arrived at Gonzalez's apartment. As Marcia was returning to the apartment after talking with Villegas, Rodriguez and Baird, Villegas shoved Marcia, angering Gonzalez. Gonzalez had jealous feeling towards Villegas, suspecting a relationship between Villegas and Marcia. Gonzalez retrieved his .22 caliber single action six shot revolver and made sure it was loaded. On his way out of the apartment, Gonzalez told Marcia, "He wants to kill me. I'll go down there and kill him." Despite Marcia's and Vasquez's pleading that Gonzalez not go, Gonzalez left with the gun. Rodriguez walked with Gonzalez to the trailer three doors away where Rodriguez lived and Villegas had been staying.

The only witnesses to what transpired in the trailer were Gonzalez and Rodriguez. According to their trial testimony, the events there unfolded as follows. They entered the trailer and sat down in the living room to drink beer. Rodriguez placed a semi-automatic .380 on a table in front of him. Gonzalez placed his .22 revolver on the couch next to him. Within a couple of minutes Villegas entered the trailer, announced his desire to fight with someone and, seeing Gonzalez, said, "With you, get up." Gonzalez grabbed his gun, but Villegas hit Gonzalez and took the gun away from him. Villegas pinned Gonzalez down on the couch with a knee against Gonzalez's cheek while beating him in the head with the .22 pistol. Villegas allegedly pointed the pistol at Gonzalez's head and pulled the trigger, but the gun did not fire.

During the attack by Villegas, Gonzalez pleaded with Rodriguez, "[h]elp me, Compadre, help me." "Take him off me. Don't let him kill me. I have a family. Take him off. Take him off." Rodriguez fired two shots into Villegas from about six feet away.

Villegas crawled out of the trailer and died at the foot of the porch steps. Neither Gonzalez nor Rodriguez came to his aid or called for medical help. Rodriguez fled and Gonzalez followed with a bleeding head wound and the .22 pistol in his hand. Upon arriving at Gonzalez's apartment, Marcia screamed at Gonzalez, "How could you?" Rodriguez got into a car with Vasquez and his wife and left for the Vasquez home in Idaho Falls. Gonzalez, Marcia and her children took a separate car to the Vasquez home. According to Elizabeth, once at the Vasquez home Rodriguez threw his pistol into an irrigation canal and Gonzalez, Marcia and Rodriguez then went to a motel to "figure out what their story would be." There, Rodriguez and Marcia agreed on a defense—that Rodriguez shot Villegas because he was beating Gonzalez in the head. The next day, Marcia drove Gonzalez and Rodriguez to Fort Hall, Idaho where Rodriguez disposed of the bullets from the .22, one of which supposedly showed evidence of a misfire. Later that evening, Marcia drove Gonzalez and Rodriguez to the Blackfoot Police Department where they turned themselves and the .22 over to the police.

Gonzalez and Rodriguez were charged with conspiracy to commit murder and murder in the first degree for the shooting death of Villegas in Bingham County.[1] Gonzalez pled not guilty and his case proceeded to trial. After the close of the state's case, Gonzalez moved for a judgment of acquittal, which the district court denied. The defense then presented its case. Thereafter, the jury found Gonzalez guilty of the included offense of voluntary manslaughter and acquitted him on the charge of conspiracy to commit murder.

Counsel for Gonzalez filed a renewed motion for judgment of acquittal on the ground that there was no evidence that Gonzalez

---

1. Rodriguez pled guilty to voluntary manslaughter and was sentenced to a unified term of twelve years with four years fixed. *State v. Rodriguez*, Docket # 25138 (Ct.App. January 18, 2000) unpublished.

knew Rodriguez was going to shoot and kill the victim when the victim was beating Gonzalez and Gonzalez asked Rodriguez for assistance. The district court granted the motion for judgment of acquittal, explaining that no evidence supported the jury's conclusion that Gonzalez aided and abetted Rodriguez's shooting and killing the victim. The state appeals.

## II.

### STANDARD OF REVIEW

■ Idaho Criminal Rule 29(a) provides that "on motion of the defendant or on its own motion [the court] shall order the entry of judgment of acquittal ... if the evidence is insufficient to sustain a conviction." Idaho Criminal Rule 29(c) permits the court to set aside the verdict and enter judgment of acquittal after a verdict of guilty is returned. In reviewing the denial of a motion for judgment of acquittal, the appellate court must independently consider the evidence in the record and determine whether a reasonable mind could conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt. *State v. Monroe,* 128 Idaho 676, 680, 917 P.2d 1316, 1320 (Ct.App.1996); *State v. Kopsa,* 126 Idaho 512, 887 P.2d 57 (Ct.App.1994). This Court will not substitute its view for that of the jury as to the credibility of witnesses, the weight to be given to the testimony, or the reasonable inferences to be drawn from the evidence. *Monroe,* 128 Idaho at 680, 917 P.2d at 1320. All reasonable inferences are to be drawn in favor of the state. *Id.* We apply this same standard of review on appeal from an order granting a motion for judgment of acquittal.

## III.

### DISCUSSION

The state argues that the district court erred in granting Gonzalez's motion for judg-

ment of acquittal for lack of evidence of aiding and abetting Rodriguez's shooting of Villegas. We agree. The jury could reasonably conclude that Gonzalez intended to promote or facilitate the commission of the offense by Rodriguez when Gonzalez, failing to shoot Villegas on his own and undergoing a beating at Villegas's hands, asked for help from Rodriguez, whom he knew to be armed with a .380 pistol.

■ Voluntary manslaughter is the unlawful killing of a human being, without malice, upon a sudden quarrel or heat of passion. I.C. § 18–4006(1); *State v. Grube,* 126 Idaho 377, 883 P.2d 1069 (1994). All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet in its commission, are principals in any crime so committed. I.C. § 18–204.[2] Aiding and abetting requires some proof that the accused either participated in or assisted, encouraged, solicited, or counseled the crime, *State v. Rivas,* 129 Idaho 20, 24, 921 P.2d 197, 201 (Ct.App.1996), or some manifestation of "a sharing by the aider and abettor of the criminal intent of the perpetrator." *State v. Hickman,* 119 Idaho 366, 367, 806 P.2d 959, 960 (Ct.App.1991).

"In every crime or public offense there must exist a union, or joint operation, of act and intent...." I.C. § 18–114. Thus, the aider and abettor must have the requisite intent and acted in some manner to bring about the intended result. The definition of aiding and abetting may encompass the activity of one who intentionally assists or encourages or knowingly participates by any of such means in bringing about the commission of a crime. W. LaFave and A. Scott, Substantive Criminal Law § 6.7(b)(c)(d), at 141–148 (1986). Thus, in order to prove Gonzalez guilty of voluntary manslaughter, the state had to show that he had the requisite

---

**2.** Idaho Code § 18–204 defines the classes of persons liable for their acts prior to or during the commission of a crime:

All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have ad-

vised and encouraged its commission, or who, by fraud, contrivance, or force, occasion the intoxication of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command or coercion, compel another to commit any crime, are principals in any crime so committed.

intent to bring about the death of Villegas and acted in furtherance of that intent by encouraging or soliciting Rodriguez to shoot Villegas under the circumstances which Gonzalez himself had helped to create. *See State v. Fabeny*, 132 Idaho 917, 924–25, 980 P.2d 581, 588–89 (Ct.App.1999).

At trial Gonzalez, Rodriguez, their friends and associates, investigating officers and experts presented a large amount of information to the jury. The jury heard testimony that around 1:00 a.m. on the day in question, Gonzalez, his wife Marcia, Eulalio Vasquez and his wife Elizabeth and Teresa Coffey had returned to Gonzalez's apartment after an evening of dancing, drinking and using methamphetamine. Elizabeth testified that Villegas had grabbed Marcia, angering Gonzalez. Marcia had told her that Gonzalez, Rodriguez and Villegas were going to Rodriguez's trailer. After the shooting, Rodriguez threw his pistol into a canal behind Vasquez's house in Idaho Falls and then Teresa, Marcia, Gonzalez, and Rodriguez went to a hotel to "figure out what their story would be." Marcia, Teresa and Rodriguez agreed that the shooting was in defense of Gonzalez.

Marcia testified that she, Gonzalez, and their friends all used methamphetamine obtained from Rodriguez, a drug dealer. She said that Gonzalez was jealous of her and Villegas. Gonzalez, with his .22 pistol, stood by Marcia as she was talking to Trena Baird. Villegas said something to him about his mistreatment of Marcia and pulled out a pistol of his own. As Marcia walked back towards the apartment, Villegas shoved her. Gonzalez was angered. He retrieved his pistol and checked to make sure it was loaded. On his way out of the apartment Gonzalez threatened to kill Villegas. Teresa testified that Gonzalez walked with Rodriguez to Rodriguez's trailer while Villegas followed.

Trena Baird testified that Villegas's pistol was on the back seat of her car when she drove away that night. On rebuttal, Baird testified that Rodriguez, Gonzalez, Marcia and Villegas were all in the drug business together and that she bought her drugs from them and worked as their runner.

Gonzalez testified through an interpreter that his .22 pistol was broken, but could be fired by turning the cylinder by hand. He said Rodriguez had asked him to accompany him to his trailer and that Villegas—very drunk—followed. Gonzalez had his .22 pistol in his hand and cocked it before he entered the trailer. In the trailer, Rodriguez told him to stay and have a beer. Villegas entered and challenged Gonzalez to a fight. Gonzalez admitted that Villegas did not have a gun in his hand or one tucked in his pants when he entered the trailer.

Gonzalez further testified that Villegas came after him, saw the gun, struggled with him over it and took it away. He explained that Villegas put the gun to his head and pulled the trigger, but the gun did not fire. Gonzales pled with Rodriguez for help, crying, "Help me, Compadre, help me" and "take him off, take him off." Gonzalez heard a shot and saw Villegas fall. He then ran home after breaking free of Villegas' grip. Gonzalez denied making up his story, admitted that he was intoxicated at the time of his fight with Villegas, and that he had used methamphetamine that night.

Rodriguez testified that Villegas entered the trailer and challenged Gonzalez to a fight. Gonzalez tried to grab his gun but Villegas took it and hit him in the head with it, causing Gonzalez to bleed. Rodriguez said that Villegas was about four inches taller and heavier than Gonzalez. Rodriguez testified that he tried to stop Villegas by telling him to calm down and by pulling him off Gonzalez, but Villegas pushed him away and told him to stay out of it. Rodriguez said, "That's it," picked up his gun and shot Villegas twice. Rodriguez admitted to washing the blood off of Gonzalez's .22 pistol and throwing away the bullets.

A police officer who had interviewed Rodriguez testified that Rodriguez had initially said Gonzalez pointed the .22 pistol at Villegas and pulled the trigger. Another officer who had first interviewed Gonzalez said that Gonzalez's initial story was that Villegas came at him with two guns, threatened to kill him and then followed him to the trailer where he pulled the .22 pistol on Gonzalez.

■ Gonzalez urges this court to substitute his version of the facts in place of the

state's version, which was accepted by the jury. Such a result, as we previously stated in *State v. Friedley*, 122 Idaho 321, 323, 834 P.2d 323, 325 (Ct.App.1992), would violate the well-established principle that an appellate court cannot substitute its views for those determined by a jury as to issues of credibility, weight of the testimony, and reasonable inferences stemming from the evidence. *State v. Robran*, 119 Idaho 285, 288, 805 P.2d 491, 494 (Ct.App.1991). Accordingly, we decline the invitation to reweigh that evidence. Consistent with the deference accorded to a jury verdict based upon substantial, competent evidence, we view the evidence adduced at trial in a light that supports the verdict—here, the state's version of the facts. *State v. Filson*, 101 Idaho 381, 386, 613 P.2d 938, 943 (1980); *State v. Brown*, 131 Idaho 61, 71–72, 951 P.2d 1288, 1298–99 (Ct.App.1998); *Rivas*, 129 Idaho at 24, 921 P.2d at 201. The jury was entitled to disbelieve Gonzalez's trial version of the facts, which was contradicted by other evidence and testimony elicited by the state. *State v. Burris*, 101 Idaho 683, 686, 619 P.2d 1136, 1139 (1980).

■ From our independent review of the evidence, we conclude that a reasonable mind could find that each material element of a voluntary manslaughter offense was proven beyond a reasonable doubt against Gonzalez, acting as a principal in that crime under I.C. § 18–204. *See State v. Fabeny*, 132 Idaho 917, 924–25, 980 P.2d 581, 588–89 (Ct.App.

1999). The jury could reasonably infer that Gonzalez attempted to shoot Villegas in accord with his previously expressed threat to kill him; that his attempt failed; that a struggle ensued in which Gonzalez encouraged Rodriguez to shoot and kill Villegas; and that they thereafter agreed upon a story of self-defense. The jury was not obligated to believe Gonzalez's testimony that he merely called upon Rodriguez for help because he was the victim of an unprovoked attack by Villegas. Accordingly, the trial court improvidently granted Gonzalez's motion for a judgment of acquittal.[3]

## IV.

## CONCLUSION

The trial court erred in granting Gonzalez's motion for judgment of acquittal. Thus, the order granting a judgment of acquittal is vacated and the case is remanded for further proceedings consistent with the views expressed herein.

Judge LANSING and Judge Pro Tem MEEHL concur.

---

3. We note that in granting Gonzalez's motion for judgment of acquittal, the district court ruled that the jury instructions had confused and misled the jury because those instructions could have been construed as requiring a finding of voluntary manslaughter if Gonzalez were acquitted on the murder charges. The state has not raised this as an issue on appeal. Therefore, we express no opinion on the propriety of the trial court's instructions.