# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49517

STATE OF IDAHO, )
            ) **Opinion Filed: February 16, 2024**
         Plaintiff-Respondent, )
            ) **Melanie Gagnepain, Clerk**
v. )
            )
MICHAEL LESLIE OLSEN, )
            )
         Defendant-Appellant. )
            )

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. James S. Cawthon, District Judge.

Judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant. Brian R. Dickson argued.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

---

HUSKEY, Judge

Michael Leslie Olsen appeals from his felony conviction for forcible penetration by use of a foreign object under both of the theories alleged by the State: a use-of-force theory and an intoxication theory. Olsen contends the district court erred in denying his motion for judgment of acquittal under Idaho Criminal Rule 29 because insufficient evidence supported either of the theories asserted by the State. He further contends the district court erred in giving a jury instruction that included the use-of-force theory despite lacking a factual basis for the instruction. For the following reasons, we affirm the judgment of conviction.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

J.B.[1] is the adult daughter of Olsen's longtime girlfriend. J.B. was twelve years old when she met Olsen, and although Olsen and J.B.'s mother never married, they resided together and Olsen acted as J.B.'s stepfather. In December 2019, Olsen came to Boise for work training and stayed with J.B. at her house. Olsen and J.B. went to dinner at a brewery and then stopped by a bar: J.B. drank two beers, one cocktail, and several shots throughout the evening. On their way to J.B's home, Olsen and J.B. stopped and bought more alcohol. J.B. was also hosting two other friends, Alex and Leslie, at her home that evening. When Olsen and J.B. arrived at the house, Alex and Leslie had already arrived. The four adults continued to drink alcohol as they played a card game. At some point, J.B. smoked marijuana. J.B. was heavily intoxicated, and while playing the game, she laid on the floor. The game was stopped to get J.B. to bed. Alex and Leslie woke her up, got her to her feet, and helped J.B. ascend the stairs to her bedroom because J.B. was sluggish and not able to walk independently. Once upstairs, Alex and Leslie helped J.B. get into pajamas and put her into her bed. When Alex and Leslie left J.B.'s bedroom, Olsen was in the upstairs hallway, just outside of J.B.'s room. Alex and Leslie spoke briefly with Olsen, who inquired what was going on, and then they went downstairs to the bedroom they were staying in. Alex returned upstairs to use the restroom and saw Olsen crouching outside of J.B.'s bedroom.

The precise sequence of events is unclear from the record, and J.B. testified that she did not clearly remember. However, J.B. testified she remembered being downstairs and the next thing she remembered was being in her bathroom, vomiting, and being "very, very sick and spinning and very intoxicated." She returned to her bed and testified there was no one in her bed or her bedroom. J.B. recalled lying in bed, but she was "spinning" so badly, that she tried to take deep breaths and go back to sleep. At some point, Olsen entered J.B.'s room and laid on her bed. Because of her level of intoxication, J.B. was either unconscious or sleeping while Olsen got into bed with her. Olsen began rubbing J.B.'s back, pushed down J.B.'s pants, and rubbed her buttocks. J.B. woke to find someone touching her and as she became more aware, she felt pain in her vagina. She realized Olsen was in her bed, moving his fingers in and out of her vagina. J.B. got out of bed, pulled her pants up, and laid on the floor next to her bed because she was still so intoxicated

---

[1] The victim is referred to by initials in the charging documents and briefing. For consistency and clarity, we will also identify the victim by her initials.

2

that she "couldn't even walk around or anything." Sometime thereafter, Olsen left J.B.'s room. Olsen and J.B. did not interact the next morning but that evening, Olsen asked J.B. if he needed to apologize for something. J.B. acted as if she did not know what he was talking about. The two had dinner that evening, interacted briefly upon returning home, and went to bed; J.B. in her bedroom, Olsen on the living room couch. Olsen left J.B.'s home the following day. J.B. confided in her friend shortly after the incident occurred and told her sister approximately one week after that. Ultimately, law enforcement was notified.

Olsen was indicted for felony forcible penetration by use of a foreign object under Idaho Code § 18-6608.[2] The State filed an amended information which alleged Olsen,

> did willfully cause the penetration of the genital opening of another person by an object, instrument, or device, against her will by use of force or violence and/or where the victim was prevented from resistance by any intoxicating substance, to-wit: by inserting a finger inside the genital opening of J.B.

At trial, following the State's case-in-chief, Olsen made an I.C.R. 29 motion, arguing that neither the use-of-force theory nor the intoxication theory were supported by admissible evidence to support a finding of guilt beyond a reasonable doubt. The State opposed the motion. The district court denied the motion. When instructing the jury, the district court provided the jury with an instruction on the use-of-force theory and the intoxication theory. The jury found Olsen guilty of forcible penetration by use of a foreign object. Olsen timely appealed.

## II.

## STANDARD OF REVIEW

Idaho Criminal Rule 29(c) permits the court, on motion of the defendant, to set aside the verdict and enter judgment of acquittal either after the State's case-in-chief or after a verdict of guilty is returned. In reviewing the denial of a motion for judgment of acquittal, the appellate court must independently consider the evidence in the record and determine whether a reasonable mind could conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt. *State v. Gonzalez,* 134 Idaho 907, 909, 12 P.3d 382, 384 (Ct. App.

---

[2]    Idaho Code § 18-6608 was amended in 2014, adding subsection (4), following the Idaho Court of Appeals' decision in *State v. Elias*, Docket No. 39139 (Ct. App. July 12, 2013) (unpublished). The statute was recodified in 2022 to I.C. § 18-6604. Idaho Code § 18-6608 used numbers to identify the subsections. Upon recodification to I.C. § 18-6604, the subsections were designated by letters. For ease of reference, we will refer to the statute as it was when Olsen was charged:  I.C. § 18-6608, with numbered subsections.

2000). We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991); *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. We apply this same standard of review on appeal from an order granting a motion for judgment of acquittal. *Gonzalez*, 134 Idaho at 909, 12 P.3d at 384.

Whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

### III.

### ANALYSIS

On appeal, Olsen argues the district court erred in denying his I.C.R. 29 motion because there was insufficient evidence to support his conviction for forcible penetration under either theory presented by the State. First, Olsen argues that there was insufficient evidence presented to support a conviction on the use-of-force theory because the State did not present evidence of force that overcame J.B.'s will. The State argues the use-of-force element was established when Olsen pulled down J.B.'s pants, which constituted extrinsic force, and it was against J.B.'s will based on the circumstances surrounding the assault and the nature of the relationship, the age difference, and the physical differences between J.B. and Olsen. Second, Olsen argues the intoxication theory includes the same force element as the use-of-force theory, which was not proven. The State contends the intoxication subsection does not contain a force element and the other elements of the subsection were met because the evidence showed J.B. was intoxicated and unable to resist as a result.

The relevant statute in this case is Idaho's forcible penetration by use of a foreign object statute, I.C. § 18-6608, which states:

> Every person who, for the purpose of sexual arousal, gratification or abuse, causes the penetration, however slight, of the genital or anal opening of another person, by any object, instrument or device:

4

(1) Against the victim's will by:
    (a) Use of force or violence; or
    (b) Duress; or
    (c) Threats of immediate and great bodily harm, accompanied by apparent power of execution; or
(2) Where the victim is incapable, through any unsoundness of mind, whether temporary or permanent, of giving legal consent; or
(3) Where the victim is prevented from resistance by any intoxicating, narcotic or anesthetic substance; or
(4) Where the victim is at the time unconscious of the nature of the act because the victim:
    (a) Was unconscious or asleep; or
    (b) Was not aware, knowing, perceiving or cognizant that the act occurred.

At issue are two subsections: subsection (1)(a) regarding forcible penetration and subsection (3) involving a victim's inability to resist due to intoxication.

Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67.

## A. The Use of Force Theory and Jury Instruction

Olsen contends the State failed to prove the force element of I.C. § 18-6608(1)(a) and therefore the district court erred in denying his I.C.R. 29 motion and instructing the jury on this theory of Olsen's guilt. He asserts the force element was not established because: (1) the State did not establish any act of extrinsic force; (2) J.B. was either asleep or unconscious when Olsen initially penetrated her and, thus, was not aware of any impending act; and (3) when J.B. left the bed, the assault ended, so nothing was done against her will. In support of his argument, Olsen points to the analysis of the force element in *State v. Elias*, 157 Idaho 511, 337 P.3d 670 (2014).

The State asserts the evidence showed beyond a reasonable doubt that Olsen committed the act against J.B.'s will by use of force. The State argues: (1) extrinsic force was established by Olsen pulling down J.B.'s pants; (2) J.B. was aware of the impending penetration because she was awake during part of the act; and (3) factors such as the nature of J.B.'s and Olsen's relationship, and the age and size difference between them, support a finding that the act was against J.B.'s will.

5

Therefore, the jury was properly instructed on this theory of guilt. The State relies on *State v. Smith*, 159 Idaho 177, 357 P.3d 1285 (Ct. App. 2015) in support of its arguments.

The force element of I.C. § 18-6608(1)(a) was analyzed in *Elias*, 157 Idaho at 515, 337 P.3d at 674. Elias was charged with forcible penetration by use of a foreign object for acts occurring while the victim was asleep. *Elias*, 157 Idaho at 513, 377 P.3d at 672. Upon awakening, the victim felt the penetration and rolled onto her side, at which point the penetration ended. *Id.* The only issue in *Elias* was whether there was sufficient evidence to establish beyond a reasonable doubt that Elias caused the uncontested penetration against the victim's will by the use of force. *Id.* at 514, 337 P.3d at 673. First, the *Elias* Court addressed whether the force had to be force in addition to the act or simply the act itself. *Id.* at 516, 337 P.3d at 675. The Court adopted the extrinsic force standard, which defines force as "anything beyond that which is inherent or incidental to the sexual act itself." *Id.* (quoting *State v. Jones*, 154 Idaho 412, 421, 299 P.3d 219, 228 (2013)). Second, the Idaho Supreme Court held that the plain language of I.C. § 18-6608(a), the use-of-force clause, requires:

> (1) the victim is aware of the impending penetration; (2) that the victim's will is that penetration should not occur; and (3) the victim's will is of no effect due to the defendant's use of force, violence, duress or threats of immediate and great bodily harm, accompanied by apparent power of execution.

*Elias*, 157 Idaho at 517, 337 P.3d at 676. Ultimately, the Court vacated the conviction because there was no evidence the victim was aware of the impending penetration or that her will was rendered ineffective by Elias' use of force. *Id.*

In a subsequent decision in *Smith*, the Court of Appeals addressed the force element of I.C. § 18-6608(1)(a). There, the twelve-year-old victim was related to the forty-five-year-old defendant. *Smith*, 159 Idaho at 180, 357 P.3d at 1288. Smith also had to move the victim's legs apart to forcibly penetrate her vagina. *Id.* The Court held:

> Smith had to overcome the victim's will (that he not insert the snake) by moving her legs apart (so that he could insert the snake). Beyond the physical aspect of moving the victim's legs apart, other factors also lead to the conclusion that this act amounted to Smith asserting a force to overcome the victim's will: the victim was around twelve years old and in the sixth grade, whereas Smith was around forty-five years old; the victim and Smith were related; and Smith had been touching the victim in other inappropriate ways.

*Id.*

In assessing what constitutes extrinsic force, other courts have found the removal or manipulation of clothing in order to facilitate sexual conduct constitutes force. *See, e.g., People*

*v. Sweet*, No. 341338, 2019 (Mich. Ct. App. May 7, 2019) (holding in assessing sentencing enhancements, the "most reasonable interpretation of the record is that defendant's removal of CC's clothing constituted part of the 'force' necessary to commit the sentencing offense"); *State v. Moeller*, 510 N.W. 2d 500, 503 (1993) (holding "removing articles of clothing from a sleeping person, physically spreading her legs," and performing sexual act is force); *State v. Howard*, No. 21CA11, 2022 (Ohio Ct. App. 2022) (holding the amount of force required varies based on factors and manipulating clothing can constitute force); *State v. Heiney*, 117 N.E.3d 1034, 1065 (Ohio Ct. App. 2018) (holding the "physical manipulation of clothing required force, however minimal, beyond that inherent in the act of the sexual contact itself"). In this case, Olsen admitted he pulled down J.B.'s pants to rub her buttocks. Like moving the victim's legs apart in *Smith*, we hold that pulling down J.B.'s pants without J.B.'s consent to facilitate sexual contact constitutes the type of extrinsic force contemplated by *Elias*.[3]

In this case, the extrinsic force element was met when Olsen pulled down J.B.'s pants. Nothing in the statute requires a separate act of force for each subsequent assault. Here, removing J.B.'s pants was necessary to facilitate all resulting acts of penetration. Furthermore, like in *Smith*, 159 Idaho at 180, 357 P.3d at 1288, in addition to Olsen's forcible act of moving J.B.'s clothing to facilitate his sexual contact, other factors also lead to the conclusion that Olsen's acts amounted to Olsen asserting a force to overcome J.B.'s will: J.B. was much younger than Olsen, Olsen had acted as J.B.'s stepfather for more than fifteen years, and Olsen was significantly bigger than J.B.

Next, Olsen contends that because J.B. was asleep, she was unaware of when the contact started and, thus, she could not be "aware of the impending penetration." Olsen again relies on *Elias*. However, as the *Smith* Court noted, in *Elias*, "the victim was *asleep* when she awoke to find that Elias' finger was *already* inside her vagina. Hence, Elias had already completed the act possibly giving rise to forcible sexual penetration when the victim awoke and became aware of Elias' finger inside her vagina." *Smith*, 159 Idaho at 181, 357 P.3d at 1289. Here, while it is true that Olsen initially penetrated J.B. while she was asleep or unconscious, as J.B. became more aware of what was occurring, Olsen continued to penetrate her multiple times. Indeed, the act

---

[3]     At oral argument, the State argued that causing pain to the victim constitutes evidence of extrinsic force because pain is not inherent to the act itself. Because the issue was not a part of the briefing, and because we find a separate forceful act, we need not determine whether pain constitutes force for purposes of the statute.

7

continued for enough time that J.B., even in her heavily intoxicated state, perceived differing sensations and became aware of Olsen "moving his hand really hard in and out of [her]" as she lay in her bed. J.B.'s statement indicates multiple penetrative acts. Thus, while J.B. may not have been aware of the initial penetration, she was aware of each of the subsequent times Olsen digitally penetrated her after she awakened. Nothing in the language of the statute limits knowledge to the initial act where multiple acts occurred.

Olsen argues that this Court should not consider each penetration as a separate act establishing J.B.'s knowledge because the act was "one continuous course of conduct." He asserts that because he cannot be charged with multiple crimes for actions occurring in that continuous course of conduct, then each act cannot act as a basis of J.B.'s knowledge. We disagree. First, Olsen cites no case law in support of the proposition that J.B.'s knowledge is somehow limited to only the beginning or first act of penetration as opposed to subsequent, multiple acts. Second, whether Olsen can be charged with more than one offense for his continuous course of conduct is altogether different than whether the acts can be separated for purposes of J.B.'s knowledge.

Olsen's "continuous course of conduct" necessarily constituted multiple acts. Upon J.B. awakening and understanding what Olsen was doing to her, she was able to perceive that Olsen was digitally penetrating her vagina and that he did it more than once. Thus, J.B. was aware of each subsequent act of penetration, and this is sufficient to show that J.B. was aware of the impending penetration.

Finally, Olsen argues there was insufficient evidence that J.B. did not want the penetration to occur and her will was of no effect due to the defendant's use of force because J.B. testified that, upon fully understanding what was happening, she got out of bed, at which point the penetration stopped. It cannot be seriously argued that J.B. wanted the penetration to occur so we need only address whether her will was of no effect. Here, some of the same facts that establish force also establish that J.B.'s will was of no effect. For example, as discussed above, in determining whether force was used, in addition to Olsen's forcible act of moving J.B.'s clothing to facilitate his sexual contact, other factors also lead to the conclusion that Olsen's acts amounted to Olsen asserting a force to overcome J.B.'s will: J.B. was much younger than Olsen, Olsen had acted as J.B.'s stepfather for more than fifteen years, and Olsen was significantly bigger than J.B. A review of the evidence presented, and reasonable inferences therefrom, demonstrate that there was substantial and competent evidence upon which a rational juror could conclude J.B.'s will was

8

overcome by use of force in violation of I.C. § 18-6608; the district court did not err in denying Olsen's I.C.R. 29 motion on this basis.

Moreover, because there was substantial evidence supporting the use-of-force theory, it was a correct statement of the law and a proper jury instruction. "A trial court is under the duty to instruct upon *every reasonable theory* of the litigants that is recognized by law as presenting a basis of a claim of relief or a defense thereto, where such theory finds support in the pleadings and the evidence." *State v. Paulson*, 169 Idaho 672, 677, 501 P.3d 873, 878 (2022) (quoting *Siercke v. Siercke*, 167 Idaho 709, 713, 476 P.3d 376, 380 (2020)). Because the jury instruction was properly given, the constitutional arguments do not need to be addressed.[4] Therefore, the district court did not err in providing the jury with the use-of-force instruction for consideration during deliberation.

**B.      Intoxication Theory**

Although not entirely clear in the briefing, Olsen appears to make two arguments related to the intoxication theory of his guilt. First, he argues the 2014 amendment to add subsection (4) to I.C. § 18-6608 "makes it clear that the *Elias*' [use of force] analysis is equally applicable to all the theories contained in the pre-2014 version of the statute, including the intoxication theory." Second, he argues that the 2014 amendment limited subsection (3) of I.C. § 18-6608 to circumstances where the victim is intoxicated but still conscious. The State contends the evidence supports a finding of guilt under the charged provisions because the alleged victim was intoxicated

---

[4]      For the first time in his reply brief, Olsen argued that, although the United States Supreme Court has upheld a conviction when one theory was properly before the jury but another was not, such a practice is not protected under the Idaho Constitution. At oral argument, counsel asserted he was permitted to raise this argument for the first time in his reply brief as a response to an argument in the respondent's brief. We disagree. Olsen raised the issue regarding the federal constitutional basis for affirming the district court but did not argue the Idaho Constitution provided greater protection than the United States Constitution. "This Court will not consider arguments raised for the first time in the appellant's reply brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005). "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Id.* The fact that the State responded to Olsen's argument in the opening brief is not an opportunity for Olsen to raise a new and different argument in reply. Olsen's reliance on *State v. Almaraz*, 154 Idaho 584, 598-99, 301 P.3d 242, 256-57 (2013), as support for his claim to the contrary is without merit. The pages Olsen cites from *Almaraz* hold that the State has the burden of showing harmless error. Nowhere in *Almaraz* does the Court hold that the appellant can raise a new constitutional argument for the first time in a reply brief.

and unable to resist as a result. The State argues that J.B.'s intoxicated state was sufficiently demonstrated and the subsections are not mutually exclusive. The State argues the addition of the subconscious subsection did not change the plain meaning of the other subsections and the intoxication provision is unambiguous.

After the Court of Appeals' unpublished opinion in *Elias*, the 2014 Legislature amended I.C. § 18-6608 to include circumstances when a victim is sexually assaulted while the victim is asleep or unconscious. The Legislature added subsection (4) to I.C. § 18-6608 but did not change any other subsection or the structure or interpretation of the existing subsections. Olsen contends the three elements outlined in *Elias* in analyzing force are also required for an intoxication analysis. This Court finds that argument unpersuasive and unsupported.

First, Olsen provides no authority for his assertion that "the plain language of the amended statute, read as a whole, makes it clear that the intoxication theory contains elements similar to those *Elias* identified for the use of force theory." Although Olsen provided authority on statutory interpretation, he failed to provide authority that supports the interpretation he suggests. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Second, the language of the intoxication subsection, I.C. § 18-6608(3), was not altered in the 2014 amendment. Third, the word "force" does not appear in the pre- or post-2014 version of I.C. § 18-6608(3). Thus, nothing about the language in I.C. § 18-6608(3), either before or after the 2014 amendment, supports Olsen's argument that the amendment necessarily incorporated the force elements of I.C. § 18-6608(1)(a) to § 18-6608(2) and (3). Notably, other than adding an additional mechanism of injury by adding § 18-6608(4), the Legislature made no other changes to the existing subsections of I.C. § 18-6608. As a result, I.C. § 18-6608(3) requires only that the victim is intoxicated to the point where they are unable to assert their will. Olsen's reliance on the elements outlined in *Elias* on the use-of-force theory in I.C. § 18-6608(1)(a) is simply not applicable to the intoxication provision of I.C. § 18-6608(3) and does not demonstrate that the State failed to prove Olsen's guilt pursuant to I.C. § 18-6608(3).

Alternatively, Olsen asserts the 2014 amendment was meant to expand the scope of the forcible penetration statute to encompass all scenarios where the victim is unconscious. He argues the only possible interpretation of adding I.C. § 18-6608(4) is to presume that the pre-amendment version of I.C. § 18-6608 did not apply to situations where the victim was unconscious of the act, *regardless of the cause* of the unconsciousness. In other words, he argues that the intoxication

10

theory of guilt pursuant to I.C. § 18-6608(3) applies *only* when the victim is intoxicated but conscious. According to Olsen, the intoxication theory in § 18-6608(3) does not apply to scenarios where the victim is unconscious, even if the cause for the unconsciousness was consumption of intoxicating beverages. In order to reach this conclusion, Olsen reads into subsection (4) the phrase "regardless of the cause."

Olsen argues that charges based on J.B.'s intoxicated condition fail because she was unconscious when the alleged acts occurred and, therefore, the State needed to charge based on I.C. § 18-6608(4) of the statute which addresses situations where the victim is asleep or unconscious. Olsen supports this assertion with a "*See, e.g.*" citation to *State v. Oberg*, Docket No. 47207 (Ct. App. July 13, 2021) (unpublished), along with a parenthetical:

> (indicating that, in a case where the intoxication and unconscious theories were pled as alternatives because the victim was slipping in and out of consciousness due to a medication at the relevant time, the intoxication theory would apply to the periods where she was conscious "but her resistance was futile because her 'arms felt so weak.' She felt as if she had sandbags on her chest,' and it was hard for her to breathe, talk, and keep her eyes open").

We find Olsen's citation unpersuasive. First, according to The Bluebook, a "*see*" cite is used where "[t]he authority supports, but does not directly state, the proposition." THE BLUEBOOK: A SYSTEM OF CITATION R. B1.2, at 4 (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020). An "e.g." cite is defined as "[t]he authority is one of multiple authorities directly stating the same proposition." *Id.* Nowhere in *Oberg* does this Court "indicate" the distinction Olsen attributes to it, and thus, the parenthetical does not accurately represent the analysis or holding of the case. *See Oberg*, Docket No. 47207 (Ct. App. July 13, 2021). As such, a "*see, e.g.*," is inaccurate. Second, *Oberg* is an unpublished opinion and, therefore, is not a precedent on which Olsen can rely. *State v. Maloney*, 168 Idaho 936, 944 n.1, 489 P.3d 847, 855 n.1 (2021) (Moeller, J., dissenting). Third, although Olsen recognizes *Oberg* has no precedential value, he lists it "as a historical example of how a learned court has analyzed the question at issue here and urges this Court to adopt that well-reasoned analysis." *Oberg* did not deal with the same issue as the issue in this case, and there is no reason to adopt the analysis. Although Olsen seems to contend he is not relying on an unpublished opinion that is precisely what he is doing. It is one thing to alert the Court to a prior *relevant* unpublished decision, but it is quite another to cite the unpublished opinion and urge the Court to follow it. The former may be appropriate, but the latter is contrary to the rules.

Regardless, in this case, there was substantial and competent evidence upon which the jury could find J.B. was conscious, but intoxicated, at the time Olsen digitally penetrated her. First, J.B.'s level of intoxication is not in dispute. Multiple witnesses testified that Olsen was extremely intoxicated. Alex and Leslie both testified that J.B. needed help ascending the stairs and they assisted her in getting ready for and being put to bed. J.B. testified she had to crawl to the bathroom to vomit and struggled to get back to her bed because of her head spinning from intoxication. J.B. also testified she was so intoxicated she did not know when Olsen arrived in her room uninvited. Thus, a rational jury could conclude J.B.'s intoxication was the primary reason she did not resist Olsen's presence in her room or the initial contact.

Second, as discussed above, J.B. was awake and heavily intoxicated while Olsen was penetrating her. J.B. became aware of Olsen "moving his hand really hard in and out of [her]" as she lay in her bed. While J.B. may not have been aware of the initial penetration, thereafter she was conscious, but intoxicated, during each subsequent act of penetration. Upon understanding what was happening, J.B. testified she was still intoxicated, and that she was "spinning" and struggling to walk even when she got out of bed to end the penetration. J.B. was so intoxicated that she could only lie down on the floor next to the bed where she again became unconscious and "passed out." Because there was substantial and competent evidence upon which a rational juror could conclude that during some of the time Olsen was digitally penetrating J.B., she was both intoxicated and conscious, and as a result of her intoxicated state, she was unable to resist Olsen's conduct, in violation of I.C. § 18-6608(3), the district court did not err in denying Olsen's I.C.R. 29 motion on this basis.

## IV.

## CONCLUSION

The district court did not err in denying Olsen's motion for judgment of acquittal under I.C.R. 29 because sufficient evidence existed to support the jury's finding under either a use-of-force theory or an intoxication theory of forcible penetration. The district court did not err in giving the use of force jury instruction because sufficient evidence supported the theory for consideration. Olsen's judgment of conviction is affirmed.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.

12